Argued and submitted September 3, 1981, affirmed as modified June 22, 1982,
petition for attorney fees denied February 9, 1983
See 294 Or 483, 658 P2d 1158 (1983)

In the Matter of the Compensation of
Sharon Bracke, Claimant.

## BRACKE,
*Respondent on Review,*

*v.*

## BAZA'R, INC. et al
*Petitioners on Review,*

## ALBERTSON'S FOOD CENTERS et al,
*Respondents on Review.*

(CA 17587, SC 27819, 27825)

646 P2d 1330

Mildred J. Carmack of Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, argued the cause and filed the

petition for review for Baza'r, Inc., while self-insured. With them on the briefs were Ridgway K. Foley, Jr., and Scott M. Kelley of Cheney & Kelley, Portland.

Scott M. Kelley of Cheney & Kelley, Portland, argued the cause and filed the petition for review for Baza'r, Inc., while insured through General Adjustment Bureau.

R. Kenney Roberts of Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland, argued the cause for respondent on review Albertson's Food Centers. On the response to the petitions for review and brief was Margaret H. Leek Leiberan of Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Eugene L. Parker of Parker & McCann, Portland, argued the cause and filed the brief for respondent on review Sharon Bracke, claimant.

Darrell E. Bewley, Appellate Counsel, K. R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem, filed a brief amicus curiae in support of the petition for review.

Richard William Davis of Lindsay, Hart, Neil & Weigler, Portland, filed the brief for O.J.'s 42nd Avenue Thriftway.

Charles R. Holloway, III, of Tooze, Kerr, Marshall & Shenker, Portland, filed the brief for Aetna Insurance Co.

G. Howard Cliff and Bruce A. Gunter, Certified Law Student, Portland, filed the brief for Industrial Indemnity Co.

Before Denecke, C.J., and Lent, Linde, Tanzer and Campbell, JJ.

TANZER, J.

## TANZER, J.

This is a workers' compensation claim under the occupational disease law, ORS 656.802 to 656.824. The claimant has a pulmonary disease colloquially referred to as "meat wrappers' asthma." The issue is whether an employer may interject the so-called "last injurious exposure" rule as a defense to the worker's claim where the claimant establishes that she contracted the disease and suffered disability while working for that employer, but that she also worked for subsequent employers under conditions which could have caused the disease.

The claimant worked intermittently as a food market meat wrapper for Baza'r, Inc. from 1974 until 1977, sometimes full-time and sometimes part-time. In early 1977 the claimant also worked part-time as a meat wrapper for both Albertson's and Thriftway food markets. Her employment with Baza'r terminated March 30, 1977, with Albertson's May 9, 1977, and with Thriftway, her last employer, May 13 or 14, 1977.

The claimant filed claims against Thriftway, Albertson's and Baza'r, all of which were denied. She requested hearings on the denials and the three claims were consolidated.

The Workers' Compensation Board, adopting the referee's order, found that the claimant suffered from a compensable occupational disease. It concluded that under the last injurious exposure rule the claimant's last employer, Thriftway, would be responsible for compensation. It denied the claim, however, because the claimant had not requested a hearing within 60 days of the Thriftway denial and had not shown good cause for her failure to do so as required by ORS 656.319.

The Court of Appeals reversed the Board's order. It found the last injurious exposure rule inapplicable because the claimant had established that she contracted the disease while she was employed by Baza'r and that her later employment caused only symptoms of the underlying disease. It held that Baza'r was the responsible employer, but remanded the case to the Board because of uncertainty in the record as to whether Baza'r was insured or self-insured

at the time the claimant contracted the disease. Baza'r filed two petitions in this court, one on its own behalf as a self-insured employer and one through its insurers. We allowed review to clarify the application of the last injurious exposure rule, adopted by this court in *Inkley v. Forest Fiber Products Co.,* 288 Or 337, 605 P2d 1175 (1980). We affirm the Court of Appeals decision, although on somewhat different reasoning.

The Court of Appeals accepted the testimony of Dr. Emil Bardana who heads the allergy section of the University of Oregon Health Sciences Center, and we are bound by its fact resolution, *Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 491 P2d 997 (1971). Meat wrappers' asthma has only recently been generally recognized as a discrete medical condition. It is a form of reactive airway disease which results from exposure to polyvinyl chloride (PVC) fumes and thallic anhydride. The disease acquired its colloquial name because food market meat wrappers are regularly exposed to these substances. Meat is wrapped in PVC film which produces the fumes when cut with a hot wire. Price label adhesive, when heated, emits thallic anhydride. Some meat wrappers become sensitized to the fumes so that they have asthmatic symptoms when subsequently exposed to them. Although the symptoms come and go, depending upon conditions of exposure, the sensitization is permanent; once sensitized the person is sensitized for life. Sensitization does not get better or worse; it exists or it does not exist. The Court of Appeals described the term "sensitization":

> "[Dr. Bardana] drew an analogy to a patient who was administered penicillin successfully 202 times throughout his life for various infections, but on the 203rd administration he has an allergic reaction to the penicillin. From that point on, he said, the patient is unable to tolerate penicillin. With respect to claimant here, Dr. Bardana stated that once she became sensitized to the PVC or the thallic anhydride from price labels, exposure to those substances would produce symptoms, but would not worsen the underlying sensitization which she had already acquired." 51 Or App at 634-635.

With that description of the disease in mind, we set out the pertinent facts in more detail. From May 1974

to September 1975 claimant was employed by Baza'r. She did not work from September 1975 to August 1976. While employed, she began experiencing mild asthmatic symptoms such as shortness of breath. It was during this period of employment that sensitization occurred. The symptoms abated during the 1975-1976 period of nonemployment. In September 1976, she returned to work part-time for Baza'r and the symptoms reappeared. On January 12, 1977, while employed cutting film with a hot wire for Baza'r, she sought hospital emergency room medical treatment for various symptoms, including shortness of breath, rapid breathing and related depression. Her condition was not then recognized, but Dr. Bardana concluded that she was suffering from "state one asthma."

Six days later, claimant was employed by Albertson's and a month later by Thriftway. The working conditions at each of her employers were of the kind which could cause sensitization and activation of symptoms, except possibly at Albertson's where there was more modern equipment and better ventilation. In May 1977, her symptoms became more severe ("state two asthma") and she ceased work. Dr. Bardana concluded that she was "disabled" at this time in the sense that even after her symptoms subsided she could never successfully return to work as a meat wrapper or in any work environment with airborne lung irritants.

Were there no last injurious exposure rule, the facts would support the claim against Baza'r. Meat wrappers' asthma is an occupational disease as defined by ORS 656.802(1)(a):

"As used in ORS 656.802 to 656.824, 'occupational disease' means:

(a) Any disease or infection which arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein."

An occupational disease is deemed an "injury" under the Workers' Compensation Law. ORS 656.804. Claimant's disease is deemed a "compensable injury" because it arises "out of and in the course of employment requiring medical services or resulting in disability," ORS 656.005(8)(a). By

January 12, 1977, before employment with food markets other than Baza'r, claimant had been afflicted with the disease and had required medical service for treatment of symptoms which interfered with her ability to work at her occupation. Thus, on that date, claimant was disabled. Claimant has established a claim against Baza'r unless that claim is defeated by events occurring after January 12, 1977.

Baza'r contends that the last injurious exposure rule operates to shift liability from it to the last employer where conditions could have caused the disease regardless of whether they actually did cause the disease. Thus Baza'r invokes the rule as a defense. Whether it is a defense in this case depends in part on the nature and purpose of the rule.

■ The last injurious exposure rule originated as a judicially adopted doctrine applicable in cases involving successive incremental injuries for which successive employers or insurers might be incrementally liable. Under the rule, the last employer who materially contributes to a worker's disabling condition is liable for compensation for the entire cumulative disability. In a sense, it is a variation upon the familiar notion that an employer takes the worker as he finds him. Professor Larson states the rule:

> "The 'last injurious exposure' rule in successive-injury cases places full liability upon the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability.
>
> "If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. In this class would fall most of the cases discussed in the section on range of consequences in which a second injury occurred as the direct result of the first, as when claimant falls because of crutches which his first injury requires him to use. * * *
>
> "On the other hand, if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition.

This is consistent with the general principle of the compensability of the aggravation of a pre-existing condition." (Footnotes omitted.) 4 Larson, Workmen's Compensation Law, § 95.12, 17-71—17-78.

The Court of Appeals adopted the rule tacitly in the accidental injury case of *Cutright v. Amer. Ship Dismantler*, 6 Or App 62, 486 P2d 591 (1971). Both the Court of Appeals and this court subsequently adopted the rule expressly in the occupational disease context. *Inkley v. Forest Fiber Products Co.*, 288 Or 337, 605 P2d 1175 (1980); *Mathis v. SAIF*, 10 Or App 139, 499 P2d 1331 (1972).

The common reference to the rule as if it were unitary is somewhat misleading. There are at least two last injurious exposure rules, each serving a different function in different types of cases. One is a substantive rule of liability assignment; another is a rule of proof.[1] The dichotomy is evident in the caselaw and in Larson's text, although it has not, to our knowledge, been previously expressed.

The substantive rule of liability is perhaps the most common. It operates to assign liability to one employer in cases of successive, incremental injuries. The rule serves as a substitute for allocation of liability among several potentially liable employers, each of whom would otherwise be liable for a portion of the disability. Typically in such cases, causation is readily determinable, but the task of allocation among several partially liable employers would be difficult and impractical. For example, where a worker suffers successive back injuries while working for successive employers, it would be difficult to determine the exact proportion of the resulting disability attributable to each employer. Allocation would also require undesirably duplicative and costly litigation. Instead, the rule assigns liability for the entire aggregate disability to the employer at the time of the last injury and dispenses with the need for allocation. For examples, *see, Cutright v. Amer. Ship*

---

[1] There are other purposes and functions of the rule. For example, one purpose is to provide certainty so that claimants are protected from the risk of late filing after an initial filing against an employer who would otherwise be liable. *Inkley,* 288 Or at 343-344. Because of our disposition of the case, this aspect of the rule and the ramifications which flow from it are not examined in this opinion.

*Dismantler, supra,* and *Smith v. Ed's Pancake House,* 27 Or App 361, 556 P2d 158 (1976). In *Davidson Baking v. Ind. Indemnity,* 20 Or App 508, 532 P2d 810 *rev den* (1975), the rule was applied to incremental, determinable hearing loss.

The other rule, the rule of proof, was the basis of our decision in *Inkley.* There, the claimant suffered incremental hearing loss caused over a period of time when claimant was subjected to conditions which could cause the disability. During that period, however, his employment was insured by successive insurers.[2] It could not be determined whether employment under the last insurer actually caused any additional hearing loss. This court held that the last insurer would be liable for the entire disability if the conditions of employment were of a nature which could have contributed to the disability. In such a case, the last injurious exposure rule was applied not only as a substitute for allocation, as in the first class of cases, but also for an altogether different purpose: to relieve the claimant of the "burden of proving medical causation," as to any specific insurer, 288 Or at 345. Thus, it is seen that one rule is to efficiently assign liability and another distinct rule fulfills a requirement of claimant's burden of proof.

The last injurious exposure rules of liability and proof also apply to occupational disease cases, but they differ in certain respects which reflect differences between injuries and diseases. Injuries are generally caused by identifiable events, such as accidents. Diseases are more commonly acquired gradually and their existence is often not perceived until after the time of affliction. Consequently, the origin of disease often is not as easily pinpointed in time and place as that of an injury. Indeed, a disease may not become apparent until years after termination of employment, *see, e.g., Fossum v. SAIF,* 293 Or 252, 646 P2d 1337 (1982). As this court said in *White v. State Ind. Acc. Comm.,* 227 Or 306, 322, 362 P2d 302 (1961):

"* * * An occupational disease is stealthy and steals upon its victim when he is unaware of its presence and

---

[2] We held in *Inkley* that the rule applied to successive insurers of the same employer in the same way it applied to successive employers. *See also, Grable v. Weyerhaeuser Company,* 291 Or 387, 402, 631 P2d 768 (1981).

approach. Accordingly, he can not later tell the day, month or possibly even the year when the insidious disease made its intrusion into his body. Although his weakened condition may manifest ill health its cause may be uncertain and puzzle even the most skillful of physicians. * * *"

We recognized in *Inkley v. Forest Fiber Products Co.*, 288 Or at 342, that:

"Uncertainties as to the cause and date of onset of chronic occupational maladies make the assignment of liability to any one employer difficult and somewhat arbitrary."[3]

■ The Workers' Compensation Act makes no provision for allocation of liability among employers. It is desirable in occupational disease cases to designate an identifiable event for the assignment of liability, analogous to accidents in injury cases, to reduce uncertainty. This court in *Inkley* judicially adopted an analogous rule of last injurious exposure for the assignment of liability in occupational diseases, as had the Court of Appeals five years before in *Mathis v. SAIF,* 10 Or App 139, 499 P2d 1331 (1972). In particular, we adopted the rule as stated by Larson establishing the onset of disability as the decisive event for fixing liability:

"In the case of occupational disease, liability is most frequently assigned to the carrier who was on the risk when the disease resulted in disability, if the employment at the time of disability was of a kind contributing to the disease. It will be observed that, in broad outline, this is comparable to the 'last injurious exposure' rule discussed in the previous subsection [regarding injuries, *see* Larson, § 95.12, quoted *supra],* except that it places more stress on the moment of disability. Occupational disease cases typically show a long history of exposure without actual disability, culminating in the enforced cessation of work on a definite date. In the search for an identifiable instant in time which can perform such necessary functions as to start claim periods running, establish claimant's right to benefits, determine which year's statute applies, and fix the employer and insurer liable for compensation, the date of disability has been found the most satisfactory. Legally,

---

[3] We also spoke in *Inkley,* 288 Or at 343, of a "rule governing allocation of liability among several employers." Because only one employer is liable, it is more accurate to say that the rule *assigns* rather than *allocates* responsibility.

it is the moment at which the right to benefits accrues; as to limitations, it is the moment at which in most instances the claimant ought to know he has a compensable claim; and, as to successive insurers, it has the one cardinal merit of being definite, while such other possible dates as that of the actual contraction of the disease are usually not susceptible to positive demonstration." (Footnotes omitted.) 4 Larson, Workmen's Compensation Law, § 95.21, 17-79—17-86.

■     Both last injurious exposure rules apply to cases of occupational disease as well as injury cases. They most commonly apply to two different fact situations. In cases of successive, incremental injury or disease exacerbation, the liability assignment rule comes into play. The last injurious exposure rule of proof more typically applies where one employment caused the disease, but more than one could have. By arbitrarily assigning liability to the last employment which could have caused the disease, the rule satisfies claimant's burden of proof of actual causation. The reason for the rules lies not in their achievement of individualized justice, but rather in their utility in spreading liability fairly among employers by the law of averages and in reducing litigation.

■     The primary difference in occupational disease cases is that the onset of disability rather than the occurrence of injury is the critical event in the application of the rules.[4] Under the last injurious exposure rule of assignment of liability in cases of successive employment, each of which has contributed to the totality of the disease, the potentially causal employer at the time disability occurs is assigned liability for the cumulative whole. If the claimant is not in potentially causal employment when disability occurs, the last such employer is liable. Under the last injurious exposure rule of proof, if claimant proves that a disease was triggered at one time, claimant has carried his burden of proof by establishing that the employer on the risk at the time disability occurred could have caused it, even though previous employers provided conditions which could have

---

[4] Arguably, given the wording of ORS 656.005(8), above, the date when symptoms necessitate medical treatment could also be deemed a triggering date for liability or a substitute for proof of causation. Because claimant suffered disabling symptoms when she first sought medical treatment, we need not examine the effect to be given to the date of first treatment.

caused it, and the rule relieves a claimant of any burden of proving actual causation. If a disability occurs when a claimant is no longer subject to potentially causal conditions, the last employment providing such conditions is deemed proved to have caused the disease even though the claimant has not proved that the conditions of last employment were the actual cause of the disease and even though a previous employment also possibly caused the disease. Date of disability controls.

Although previous cases have not presented the occasion to distinguish these applications of the rules, they are consistent with the above analysis. Both *Mathis* and *Fossum* involve diseases incurred gradually over a period of successive employment. Disability did not occur until years after the last employment which probably caused the disease. In *Mathis,* the claimant had probably contracted the disease (asbestosis) 10 years prior to actual disability. Claimant retired when the disability became manifest. The last employer was held liable because the last injurious exposure rule served to fulfill claimant's burden to prove that the last employment was a "material contributing cause" of the disease. In *Fossum,* the disability (terminal cancer) appeared many years after the last of successive employments, any one of which involved conditions which could have caused the disease. The last such employer was held liable. In both cases, the rule was applied both as a rule of proof and as a rule of liability assignment to the employer at the time of disability or to the last employer prior to disability.

In this case, the claimant has proved that she contracted her disease and suffered disability during and as a result of her employment with Baza'r. She has proved compensability and disability without reliance upon the last injurious exposure rule. The rule enters the case only because Baza'r contends in defense that a subsequent employer, not Baza'r, should be deemed liable for the disability.

The operation of the rule, as we said in *Inkley,* provides certainty in a way which is "somewhat arbitrary." It operates generally for the benefit of the interests of claimants. It is fair to employers only if it is applied

consistently so that liability is spread proportionately among employers by operation of the law of averages. We hold that employers have and may assert an interest in the consistent application of the last injurious exposure rules, either as to proof or liability, so as to assure that they are not assigned disproportionate shares of liability relative to other employers who provide working conditions which generate similar risk.[5]

■ Liability was properly assigned to Baza'r in this case because the disease was contracted and disability occurred during employment at Baza'r. According to the evidence believed by the Court of Appeals, the employment subsequent to Baza'r did not contribute to the cause of, aggravate, or exacerbate the underlying disease. Had that occurred, a later employer would be liable under the last injurious exposure rule of liability, see n 5. Rather, claimant's subsequent employment only activated the symptoms of a pre-existing disease, a difference we discussed in *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979), and need not repeat. Liability for the disability caused by the underlying disease is fixed when the disability arises. A recurrence of symptoms which does not affect the extent of a continuing underlying disease does not shift liability for the disabling disease to a subsequent employer. Had there been a finding that the underlying disease had been aggravated or exacerbated during employment at Thriftway or Albertson's, one of those later employers might have

---

[5] There is no reason to apply the rule with any greater arbitrariness than is required to achieve its purposes, but there is no basis in this case to recognize an exception or qualification of the rule. It is arguable that an employer has no interest in the unnecessary dominance of an artificial rule when a claimant foregoes the benefit of the rule and relies upon proof of actual causation. It is questionable whether an employer can invoke the rule of proof as a defense to defeat the rights of a claimant who successfully proves actual causation. To allow that would be to allow an employer to inject the rule into a case to defeat the very interests of a claimant which the rule is intended to serve. Similar considerations may apply in cases presenting limitations problems, see n 1. In cases of incremental injury, such as *Inkley,* it may be that an employer may invoke the rule of liability assignment to shift liability to a later employer. Procedures exist whereby any causal employer can join a later causal employer in order to protect its proportional interest. *See, e.g.,* Oregon Administrative Rule 436-54-332. Also, an employer's interests may be protected where, as here, a claimant files against all possibly liable employers. Because we hold that disability occurred during Baza'r employment, we need not consider the application of the rules in those situations. *See also, Fossum v. SAIF, supra* at n 1.

been liable under the last injurious exposure rules, but that is not the case. Baza'r is liable.[6]

Affirmed as modified.

---

[6] Our resolution of this case renders remand for determination of insurance coverage unnecessary. The record establishes that Baza'r was insured by New Hampshire Insurance Co. on January 12, 1977, the date claimant became disabled.