Argued and submitted February 8, affirmed June 22, petition for rehearing denied July 27, 1982

In the Matter of the Compensation of
James E. Fossum, Deceased,

FOSSUM,
*Respondent on Review,*

*v.*

STATE ACCIDENT INSURANCE FUND,
*Petitioner on Review,*
ARGONAUT INSURANCE COMPANY et al,
*Respondents on Review.*

(CA 14961, SC 27959)

646 P2d 1337

Darrell E. Bewley, Appellate Counsel, Salem, argued the cause and filed the petition for review for the State Accident Insurance Fund.

Allen T. Murphy, Jr., Portland, argued the cause for respondent on review Helen Fossum. With him on the brief was Richardson, Murphy, Nelson & Lawrence, Portland.

Emil Berg, Portland, argued the cause for respondent on review Argonaut Insurance Company. On the brief were Margaret H. Leek Leiberan and Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Jerard S. Weigler, Portland, argued the cause for respondent on review Underwriters Adjusting Co. With him on the brief was Lindsay, Nahstoll, Hart, Neil & Weigler, Portland.

Before Denecke, C. J., and Lent, Linde, Peterson, Tanzer and Campbell, JJ.

TANZER, J.

## TANZER, J.

This is a workers' compensation claim under the Occupational Disease Law, ORS 656.802 to 656.824, brought by the widow of a worker who died from mesothelioma, a form of cancer caused by exposure to asbestos. There are two issues: The first is which of several potentially causal employers is liable for compensation. The second is whether an inference is permissible that the deceased worker's former employer was insured by the State Industrial Accident Commission (SIAC), predecessor to the State Accident Insurance Fund (SAIF), where applicable law required the employer to secure coverage by SIAC or to file a notice of intent not to be covered.

The deceased was an electrical worker. During the early 1940's he worked for three different shipbuilders, the last of which was Kaiser Company T.R.D. From 1948 to 1967 he worked primarily for W.R. Grasle Company. From 1969 to 1976 he worked for Willamette Western. Shortly after leaving Willamette Western, the deceased was diagnosed as having mesothelioma. He died on August 5, 1977.

The procedural history of this claim is involved. The worker's widow filed claims with SAIF against the three shipbuilders, and against W.R. Grasle Company and Willamette Western. All the claims were denied and were consolidated for hearing before the Workers' Compensation Board.

The referee found that the claimant suffered from an occupational disease and that Kaiser was the responsible employer and SAIF the carrier liable for benefits. The board reversed, finding that the claimant had not proved either medical or legal causation. The Court of Appeals concluded that the claim was barred by the applicable statute of limitations, *Fossum v. SAIF*, 45 Or App 77, 607 P2d 773 (1980). This court reversed on the limitations issue and remanded for a determination of the merits of the claim, 289 Or 777, 619 Pd 233 (1980).

On the merits, the Court of Appeals reversed the board. It found that the deceased's mesothelioma was an occupational disease caused by exposure to asbestos in the workplace. Because mesothelioma does not generally

develop until 20 to 40 years after exposure to asbestos, the court found that employment within the last 20 to 40 years could not have actually contributed to the cause of the deceased's disease. It concluded that the only exposure which could have contributed to the cause of the disease occurred while the deceased was employed in the shipyards. Under the last injurious exposure rule, Kaiser, the last shipbuilder for whom claimant worked, was the responsible employer. In addition, it found that SIAC was Kaiser's carrier during the deceased's employment there, and that SAIF was therefore responsible for benefits.

SAIF petitioned for review, contending that the Court of Appeals misapplied the last injurious exposure rule in finding Kaiser to be the responsible employer, and that it impermissibly shifted the burden of proof to SAIF to establish that Kaiser was not insured by SIAC during the relevant time period. We allowed review to further refine the proper application of the last injurious exposure rule, *see also Bracke v. Baza'r*, 293 Or 239, 646 P2d 1330 (1982), and to consider whether the claimant may rely on an inference of SIAC's coverage under the circumstances presented here. We affirm, but on different reasoning.

According to the medical testimony accepted by the Court of Appeals, mesothelioma is caused by exposure to asbestos scattered in the air in very small particle form. Two physicians testified, based upon statistical evidence, that exposure to asbestos under the conditions of close containment which existed in World War II shipyards causes mesothelioma 20 to 40 years after exposure. They also testified (one as a medical probability, the other as a medical certainty) that work at the shipyards was the actual cause of the worker's mesothelioma.

There was an attempt to prove that the worker was exposed to asbestos during post-1945 employment with Grasle and Willamette Western under conditions which could have caused mesothelioma. We conclude the evidence was insufficient as a matter of law to establish that fact. The nature and intensity of the worker's exposure at Grasle, an electrical construction company, is not established by evidence. Particularly, there is no evidence that

the Grasle conditions of exposure were of the nature and intensity which can cause mesothelioma. Similarly, as to Willamette Western, where the worker was exposed to asbestos released in the course of making brake linings, one physician said that there was no statistical evidence that brake lining manufacture caused mesothelioma, although it was possible only in the sense that it could not be ruled out. The other physician said employment at Willamette Western could not have caused it. Again, a fact finder could not have found from the evidence that the worker was exposed at Willamette Western to conditions which could have caused mesothelioma.

■ The Court of Appeals found that the shipyard employment caused the worker's mesothelioma and that employment at Grasle and Willamette Western did not, based on the physicians' testimony that the disease appears 20 to 40 years after the causal exposure. In applying the last injurious exposure rule to claims for occupational disease, however, the issue is not which employment actually caused the disease, but which employment involved conditions which could have caused it. If conditions of exposure at Grasle could have caused the disease, for example, the exposure would have been prior to the 20-year minimum period for disease development and Grasle would have been liable as potentially causative under the last injurious exposure rule. The Court of Appeals apparently excluded the Grasle employment because it was not an actual cause. The correct analysis under the last injurious exposure rule, however, is that Grasle is not liable because there is no evidence of exposure at Grasle to conditions which could have caused the disease. The same may be said of the employment at Willamette Western.[1]

---

[1] The employment at Willamette Western could not have been an actual cause of the disease because it was during the 20-year period before which actual causation must have occurred. Had it been proved and found that the conditions of exposure at Willamette Western were of a kind which could have caused the disease, then under the last injurious exposure rule as described by Larson, Willamette Western would be liable even though that employment could not have been the actual cause. See 4 Larson, Workmen's Compensation Law § 95.21, but see, Bracke, n 5. Where, as here, claimant's interests are protected because all potentially causal employers are parties, it is arguable that a defense of actual impossibility should be allowed to reduce the otherwise arbitrary operation of the last injurious exposure rule. Cf., Bracke, n 5. Because there is no evidence of potentially causative exposure at Willamette Western or Grasle, however, we need not decide this issue.

That leaves the shipyards as the only possible contributing causes of the worker's disease. Determining which of the three shipbuilders is liable requires application of the last injurious exposure rule.

■ As we observed in *Bracke,* there are at least two last injurious exposure rules, one which assigns liability where successive employment contributes to the totality of the disease, and one which substitutes for proof of actual causation. Here, both rules apply. The deceased was exposed to asbestos in the shipyards during successive employments, each of which could have contributed to cumulative cause of the disease. The claimant has proved that one or more of those employments actually caused the disease, but cannot prove which did so. Under both rules, Kaiser, the last potentially causal employer, is solely liable.

Kaiser no longer exists. Thus the second issue is whether SIAC was Kaiser's carrier during the deceased's employment, making SAIF the carrier responsible for benefits.

Under the workers' compensation statutes in effect at that time, SIAC and only SIAC was authorized to provide workers' compensation coverage under the Workers' Compensation Law. OCLA §§ 102-1752; 102-1735. Every injured workman who sustained injury while employed by a covered employer was entitled to compensation benefits from SIAC, "in lieu of all claims against his employer." OCLA § 102-1752.

Kaiser was a shipbuilder. OCLA § 102-1725(c) provided that "shipbuilding operations" were "hazardous occupations." An employer in a "hazardous occupation" which did not file a notice with SIAC was nevertheless automatically subject to the act. OCLA § 102-1721. OCLA § 102-1712 provided, however, that "hazardous occupation" employers could opt out of workers' compensation coverage:

"All persons, firms and corporations engaged as employers in any of the hazardous occupations hereafter specified shall be subject to the provisions of this act; provided, however, that any such person, firm or corporation may be relieved of certain of the obligations hereby imposed and lose the benefits hereby conferred by filing with the Commission written notice of an election not to be

subject thereto in any manner hereinafter specified * * *. It is the purpose of this act that an occupation and all work incidental thereto and all workmen engaged therein shall be wholly subject to or wholly outside the provisions of this act." OCLA § 102-1712.

OCLA § 102-1713 set forth the procedure by which an employer engaged in a hazardous occupation could elect "not to contribute to the Industrial Accident fund." If an employer made such an election, injured employees of such employer were not eligible for compensation benefits, *Carlston v. Greenstein,* 256 Or 145, 148, 471 P2d 806 (1970), but the employer was subject to suit from the injured employee, and the defenses of assumption of risk, contributory negligence, and fellow servant, were unavailable to the employer. OCLA § 102-1713.

In summary, reference to the statutes in effect at the time of last injurious exposure establishes as a matter of law that with one exception, SIAC was required to pay compensation benefits to injured workers of employers in hazardous occupations, whether or not SIAC received contribution from any such employer, even if SIAC was unaware of the employer, and even if the employer did nothing. OCLA § 102-1721. The only situation in which SIAC would have no obligation to pay compensation benefits to an injured employee of an employer in a hazardous occupation was if the employer had opted out under OCLA § 102-1713. Thus it is established that the worker was covered and there is no evidence from which a fact finder could find the sole exception to coverage to have been proved. We therefore conclude that this record establishes as a matter of law that SAIF is liable.[2]

Affirmed.

---

[2] We do not consider whether the claimant's burden of proof goes beyond establishing the identity of a liable employer. Normally, assignment of liability is litigated by potentially liable insurers with nominal participation by the claimant. *See* ORS 656.307. Here, the Court of Appeals' finding of coverage resolves the factual issue regardless of who had the burden of proof.

Also, we realize that our decision has enormous financial implications. It subjects SAIF to an immense pool of unforeseen risk, incurred when SIAC was a monopoly. Obviously, some of the asbestos cases presently in litigation and to come will require payment from current premiums, which may leave SAIF in an untenable competitive position. The economic and humanitarian problem of asbestos-related diseases is larger than the scope of the courts' case-by-case decision-making, and may be more amenable to legislative solution.