Argued and submitted December 2, 1986, reversed and remanded June 23, 1987

In the Matter of the Compensation of
Thomas L. Runft, Claimant.

RUNFT,
*Petitioner on Review,*

*v.*

SAIF CORPORATION et al,
*Respondents on Review.*

(WCB 83-03962; CA A34302; SC S32994)

739 P2d 12

Robert K. Udziela, Portland, argued the cause for petitioner on review. With him on the brief were Diana Craine, Jeffrey S. Mutnick and Pozzi, Wilson, Atchison, O'Leary & Conboy, Portland.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

LENT, J.

**LENT, J.**

The issue is whether an employer whose working conditions were the major contributing cause of a claimant's asbestosis may avoid responsibility for payment of compensation by showing that working conditions at the claimant's later employment contributed to the claimant's disability, where the claimant has made no claim against the later employer, and the first employer has not sought to join the later employer in the administrative proceeding. We hold that the first employer may not avoid responsibility in those circumstances.

Because there is evidence to support them, we take the facts as found by the Court of Appeals. *Sahnow v. Fireman's Fund Ins. Co.,* 260 Or 564, 568, 491 P2d 997 (1971). In *Runft v. SAIF,* 78 Or App 356, 717 P2d 248 (1986), the court found that claimant worked from 1959 to 1966 for Specialized Service (SS), which was insured by SAIF, during which he was exposed to great clouds of asbestos dust in a small room without ventilation or respiratory protection. Later he worked for four years at International Harvester (IH), where he was occasionally exposed to asbestos. Subsequent thereto he had other employment, in which there was no exposure to asbestos. There is no finding of fact as to the dates of the employments following that at SS.

In January 1983 claimant filed a claim with SAIF contending that he had "asbestos poisoning" resulting from his work at SS. On the claim form under date February 3, 1983, SAIF's employee noted that acceptance or denial of the claim was deferred and that it was to be treated as a nondisabling occupational disease claim. By letter to claimant dated March 21, 1983, SAIF denied the claim.

> "You have filed a claim for asbestosis, which you allege to be an occupational disease as the result of exposure to asbestos while in the employ of Specialized Service, Inc. Insufficient evidence exists to substantiate that you were, in fact, exposed to asbestos while in their employ, nor is there sufficient medical evidence to substantiate that you do, in fact, have any condition as the result of your alleged exposure while in the employ of Special Services, Inc. Additionally, information in file discloses that you have a long history of heavy cigarette smoking, which appears to be the major contributing factor to your current lung complaints. Therefore, we are unable to

accept responsibility for your condition, and without waiving other questions of compensability, this formal denial is made."[1]

Claimant timely requested a hearing. At the outset of the hearing on October 4, 1983, the referee inquired of claimant's counsel what issues were involved. Counsel answered that the primary issue was compensability and the secondary issue was a claim for attorney fees and penalties for unreasonable denial of the claim. Claimant's counsel drew to the attention of the referee that

"SAIF has made no effort consistent with the *Luhrs* case [*SAIF v. Luhrs,* 63 Or App 78, 663 P2d 418 (1983)] and other cases that they rely on repeatedly to bring in any other employers in this case. * * * So I'm not quite sure what the defense is, if any."

The referee then asked SAIF's counsel whether there were any cross issues, and he stated that there were none.

In his opening statement to the referee, however, SAIF's counsel said:

"Well, the basis for the denial, as stated on the denial, is that we question the amount and degree of exposure at this employer. We have here to testify a man who was there at the beginning of Mr. Runft's employment, who did the same type of work and who will controvert much of what the claimant will have to say and has said about the amount of exposure, the description of the shop, and the ventilation, and those sort of things. I think there's a good deal of disparity in what claimant has told many people and what, indeed, is true.

---

[1] We have serious doubts that the phrase, "without waiving other questions of compensability," in the last sentence of this letter of denial should have any efficacy in light of OAR 436-54-305(4), which apparently was then in effect and provided:

"The notice of denial in compliance with OAR 436-83 shall:

"(a) specify the factual and legal reasons for denial;

"* * * * *"

OAR 436-83-120, also apparently then in effect, provided that "the notice of denial shall specify the factual and legal reasons for denial." *Former* ORS 656.262(6) provided:

"If * * * [SAIF] * * * denies a claim for compensation, written notice of such denial, stating the reason for the denial * * * shall be given to the claimant. * * *"

It appears that the presently applicable rule is OAR 438-05-055, which provides:

"In addition to the requirements of ORS 656.262 to 656.270, the notice of denial shall specify the factual and legal reasons for denial. * * *"

"Also, the Referee will note, in the history, that the claimant was exposed subsequent to this employment, too. I believe Dr. Lawyer will indicate that that exposure may well have been detrimental.

"* * * * *

"Dr. Lawyer will probably indicate that exposure subsequent to our employer may well have been the material contributing factor to the development of whatever condition the claimant has now.

"Those are the two bases for our denial. I think we have adequate and proper grounds for the denial, penalties should not attach, and the denial should be affirmed."

We construe SAIF's original denial of this claim to have been related to compensability only. In that original denial, SAIF relied on two factual assertions: (1) that claimant was not exposed to asbestos at SS and (2) that he did not have any condition resulting from alleged exposure while employed at SS. SAIF's counsel's opening statement raised for the first time a defense of want of responsibility, as distinguished from compensability.

The referee found that claimant's exposure to asbestos while employed at IH contributed significantly to his disease. The referee concluded:

"Procedurally, claimant argues that SAIF cannot rely upon the last injurious exposure rule defense because no other employers were joined as a party to this proceeding. In reviewing the situations in *Luhrs* [*SAIF v. Luhrs,* 63 Or App 78, 663 P2d 418 (1983)], *Gupton* [*SAIF v. Gupton,* 63 Or App 270, 663 P2d 1300 (1983)] and *Graham* [*Wesley E. Graham,* 35 Van Natta 1303 (1983)], neither of the parties joined or attempted to join subsequent employers. *I find the defendant can rely on the evidence and need not join subsequent employers as a condition precedent to raising the last injurious exposure rule.*" (Emphasis added.)

Claimant requested Board review. The Board affirmed the referee's holding that SAIF could avoid responsibility by resort to the last injurious exposure rule without joining IH.

"With regard to claimant's arguments concerning joinder, although the court in *Bracke* noted that procedures exist pursuant to OAR 436-54-332 where one employer could join another employer, *Bracke v. Baza'r, supra,* 293 Or at 250 n. 5,

we believe there are certain unresolved jurisdictional problems lurking in a procedure which allows one *employer* to join another employer in the absence of a claim having been filed against that employer. *E.g. Syphers v. K-W Logging Co.,* 51 Or App 769 (1981). Certainly, for whatever it is worth, it has been the longstanding policy of this agency that motions by one employer to join another employer in a pending hearing proceeding are consistently denied if the claimant has never made a claim against the employer sought to be joined." (Emphasis in original.)

On request for judicial review, the Court of Appeals affirmed. The court found that both the employment at SS and that at IH contributed to the disability suffered by claimant. The court held that there was no authority that would have permitted SAIF to join IH (and/or its insurer) "when, as here, compensability, as well as responsibility, was at issue at the time when the claim was denied and at hearing. *See* ORS 656.307; OAR 436-54-332." (Footnote omitted.)

If the Court of Appeals meant to state that responsibility, as distinguished from compensability, was at issue at the time of denial, we believe the court was under a misapprehension. SAIF's denial of this claim made no mention of the possible responsibility of any other employer or of the last injurious exposure rule. The Court of Appeals was correct that both compensability and responsibility were at issue at the time of hearing.

## I.

An occupational disease is considered an "injury" under Oregon's workers' compensation law. ORS 656.804. For a disease to be an occupational disease, it must be a disease that "arises out of and in the scope of the employment, and to which an employe is not ordinarily subjected or exposed other than during a period of regular actual employment therein." ORS 656.802(1)(a). Under this statute an occupational disease is a disease whose "major contributing cause" is work related. *See McGarrah v. SAIF,* 296 Or 145, 166, 675 P2d 159 (1983); *Dethlefs v. Hyster,* 295 Or 298, 308-10, 667 P2d 487 (1983).

If a claimant has worked for only one employer, the claimant's task is relatively straightforward: the claimant must show that working conditions at that employment were

the major contributing cause of the disease. If, however, a claimant has worked for more than one employer, the claimant must show not only that the disease's major contributing cause was work related, but also show which employer is responsible for payment of compensation. This additional requirement creates problems of proof and assignment of responsibility for compensation.

The problem of proof is at least twofold. First, many occupational diseases, including asbestosis, often develop several decades after first exposure to the disease-causing substance. Although it may be relatively simple to identify the employments at which the claimant was or could have been exposed, it will often be difficult or impossible to establish the nature and degree of the exposure. Similarly, although the relationship between a disease and exposure to a substance may be well established, it will often be difficult to state with sufficient medical probability the degree to which, if any, a particular exposure contributed to the development of the disease.

The problem of assigning responsibility is both practical and legal. The practical problem is that, even if it is medically possible to allocate responsibility for an occupational disease among several employers, the time and other resources necessary to do so may make the allocation expensive and inefficient. The legal problem is that there is no provision in Oregon's workers' compensation law for the apportionment of responsibility for a single disease or injury among employers. *See Bracke v. Baza'r,* 293 Or 239, 247, 646 P2d 1330 (1982); *Inkley v. Forest Fiber Products Corp.,* 288 Or 337, 342, 605 P2d 1175 (1980). The problem of allocation has been left for judicial and administrative resolution.

This court's solution to both the proof and allocation problems has been the last injurious exposure rule, which we adopted in *Inkley.* Briefly stated, if a workers' compensation claimant has worked for more than one employer that could have contributed to the claimant's occupational disease, the last injurious exposure rule assigns full responsibility for payment of compensation for the disease to the last such employer for whom the claimant worked.[2] *See Boise Cascade*

---

[2] The "last injurious exposure" rule also applies to injuries at successive employers, *e.g., Boise Cascade Corp. v. Starbuck,* 296 Or 238, 675 P2d 1044 (1984), and to cases in which an employer is successively insured by two or more carriers, *e.g., Inkley v. Forest Fiber Products Co.,* 288 Or 337, 605 P2d 1175 (1980).

*Corp. v. Starbuck,* 296 Or 238, 241, 675 P2d 1044 (1984); *Fossum v. SAIF,* 293 Or 252, 256 & n 1, 646 P2d 1337 (1982); *Bracke,* 293 Or at 244-46; *Inkley,* 288 Or at 344-45; *see also* 4 Larson, The Law of Workmen's Compensation § 95.24-.26 (1986). The rule is really two rules, a rule of proof and a rule of assignment of responsibility, each designed to address the problems noted above.

The rule of proof operates generally for the benefit of claimants. *Bracke,* 293 Or at 249. It relieves claimants of the burden of proving the degree to which, if any, exposure to disease-causing substances at a particular employer actually caused the disease. The claimant is required to prove only that the disease was caused by employment-related exposure; the claimant is not required to prove that exposure at a particular employer's workplace caused the disease. Whether employment at any one workplace was the actual cause of the disease is irrelevant under the rule. *See Fossum v. SAIF, supra,* 293 Or at 256.

As a rule of assignment of responsibility, the last injurious exposure rule assigns full responsibility to the last employer at which the claimant could have been exposed to the disease-causing substance. This is true no matter how brief or insignificant the possible exposure at the last such employer. *See* Larson, *supra,* § 95.26(a). For this reason, the rule can be extremely arbitrary in a particular case, but this arbitrariness is mitigated in the long run as responsibility is spread proportionately among employers by operation of the law of averages. *See Bracke v. Baza'r, supra,* 293 Or at 249-50.

The principal benefit of assigning responsibility to the last employer is economy. It is more economical arbitrarily to assign full responsibility to the last employer than to attempt to apportion accurately responsibility according to causation. In addition, by assigning responsibility to an employer who can be identified without a determination of causation, the claimant is better protected from the risk of filing claims against the wrong employer. The limitations period for filing occupational disease claims is only 180 days. ORS 656.807. Within that period a claimant will generally be able to identify dates of employment and exposure to the disease-causing substance but will frequently be unable to determine whether and to what extent a particular place of

employment caused the disease. *See Inkley v. Forest Fiber Products Corp., supra,* 288 Or at 343-44.

## II.

■ Although the last injurious exposure rule was designed primarily for the benefit of claimants, employers have attempted to use the rule defensively. In cases in which the claimant has not filed a claim against the employer that would be responsible under the rule, and that employer has not otherwise been made a party, invocation of the rule will usually, as in this case, have the effect of defeating the claimant's right to compensation altogether because of the 180-day limit for filing claims. For this reason, we have held that an employer cannot use the rule of proof to defeat a claim where the claimant has established a right of compensation from the employer by proving actual causation. *See Boise Cascade Corp. v. Starbuck, supra,* 296 Or at 243-45; *cf. Bracke v. Baza'r, supra,* 293 Or at 250 & n 5.

*Starbuck,* although it involved an injury rather than an occupational disease, is a good illustration of an employer's inability to use the rule of proof defensively. In *Starbuck* the claimant had suffered a back injury while employed by the first employer. While working for the second employer, the claimant's back injury worsened. The working conditions at the second employer were of the type that could have caused the back injury, but the Court of Appeals found that work at the second employer had not in fact contributed to the injury. This court did not permit the employer to invoke the rule as a defense because the rule of proof is primarily intended to ease the burden of proof for claimants. If claimants choose to prove actual causation, and thereby do not rely on the rule of proof, employers should not be able to defeat the claim using a rule that would no longer serve any purpose but to defeat the claim.

This claimant did not rely upon the rule of proof. He established that his exposure to asbestos at Specialized Service was an actual cause of his asbestosis and also that that exposure was the "major contributing cause" of his disease. Although his subsequent employment was of a type that could have caused his disease, SAIF could not have used the last injurious exposure rule as a rule of proof to defeat this claim. As a rule of assignment, however, the rule is relevant to this

case. Claimant's evidence established, and the Court of Appeals found, that his subsequent employment "significantly" contributed to his disease, though to a lesser extent than that at SS.

As we noted above, the assignment of responsibility aspect of the last injurious exposure rule serves essentially two purposes: administrative efficiency and definiteness in the assignment of responsibility. Where a claimant has actually established the degree to which two or more employers have been responsible for causing the claimant's disease, there is no administrative economy to be gained by application of the rule. Second, the need for definiteness in the assignment of responsibility is a need of claimants; claimants must know against whom they should file their claims. This is not a reason for the defensive use of the rule.

## III.

In *Bracke* we said, "Procedures exist whereby any causal employer can join a later causal employer in order to protect its proportional interest. *See, e.g.,* Oregon Administrative Rule 436-54-332." *Bracke,* 293 Or at 250 n 5. In its decision in this case, the Board noted our statement but questioned it because the Board believed "there are certain unresolved jurisdictional problems lurking in a procedure which allows one *employer* [original emphasis] to join another employer in the absence of a claim having been filed against that employer." For that statement the Board cited *Syphers v. K-W Logging, Inc.,* 51 Or App 769, 627 P2d 24 (1981). In that case, the claimant filed a claim and simultaneously filed a request for hearing. The Court of Appeals did no more than to hold that his request for a hearing was premature because the employer had 60 days in which to accept or deny the claim. We do not believe that case to be in point.

In the case at bar, the Court of Appeals held that there was no authority to permit joinder by SAIF of IH, citing ORS 656.307 and OAR 436-54-332, which is the same rule that we cited in *Bracke* as giving such authority.

Both the Board and the Court of Appeals are correct in concluding that ORS 656.307 and OAR 436-54-332 do not directly speak to occupational diseases; however, ORS 656.804 provides that an occcupational disease is considered to be an

injury. We see no reason that OAR 436-54-332 should not apply to the situation where there are two or more employers and two or more exposures to occupational disease. OAR 436-54-332 provided:

"* * * * *

"(2)   The Compliance Division shall, by order, designate who shall pay a claim, if the claim is otherwise compensable, where there is an issue regarding:

"* * * * *

"(c)   responsibility between two or more employers or their insurers involving payment of compensation for two or more accidental injuries; * * *

"* * * * *

"(3)   Insurers or self-insured employers with knowledge of a situation as defined in subsection (2) shall expedite the processing of the claim by immediate priority investigation to determine responsibility and whether the claim is otherwise a compensable injury claim.

"(4)   When a situation as described in subsection (2) arises, the insurers or self-insured employers shall immediately notify any other affected insurers or self-insured employers of the situation. A copy of all medical reports or other pertinent material available relative to the injury shall be provided the other parties.

"(5)   Such notice received from another insurer or self-insured employer shall be notice of a claim referred by the Director as provided by ORS 656.265(3)."

Although OAR 436-54-332(2)(c) speaks specifically only to two or more accidental injuries involving two or more employers, we cited it in *Bracke* as being applicable to occupational disease claims. There is nothing in the rule to cause us to believe that it was not intended also to apply to occupational disease claims.

■       That being so, under subsection (3), when SAIF became aware that its insured and another employer were involved with an occupational disease that could have resulted from exposure at either or both places of employment, SAIF was required to engage in "immediate priority investigation to determine responsibility" as well as compensability. Under subsection (4), SAIF was required immediately to notify any

other affected employer, which would include IH. Under subsection (5), such notice, if given, would be treated by the notified employer or insurer as a claim referred by the Director of the Workers' Compensation Department under ORS 656.265(3), which provides:

"Notice [of an accident] shall be given to the employer * * *. If for any reason it is not possible to so notify the employer, notice may be given to the director and referred to the insurer or self-insured employer."

The rule has the effect of requiring the employer who has notice of the situation described in subsection (2)(c) to bring in the later employer by a procedure that is equivalent to a claim against that later employer. We conclude that there is indirect authority for joinder even after request for hearing by the claimant where it becomes apparent that the situation described in subsection (2)(c) obtains.[3]

■ From exhibit 26 it appears that Dr. Lawyer, to whom SAIF's counsel referred in his opening statement to the referee, had written a report under date May 25, 1983, that should have alerted SAIF to the issue of responsibility. At any rate, exhibit 26, a letter from Dr. Lawyer received by SAIF on August 24, 1983, certainly alerted SAIF to the fact that claimant did indeed have asbestosis, and if SAIF would shift responsibility, SAIF was required by the administrative rule to undertake "immediate priority investigation" and to involve the later employer. We hold that SAIF's failure to do so prevents SAIF from utilizing the last injurious exposure rule to avoid responsibility for payment of this compensable claim.

The decisions of the Court of Appeals and of the Board are reversed, and this matter is remanded to the Board for entry of an order holding SAIF responsible for payment of any compensation to which claimant may be entitled.

---

[3] In the portion of the Board decision quoted above at page 5, the Board stated that it had been the longstanding agency policy not to allow the motion of an employer to join another employer if the claimant has not made a claim against the other employer. The Board cites no rule or statute as the basis for the policy. Our reasoning from the administrative rule should put an end to the policy in circumstances such as those in this case.