Argued and submitted June 9, affirmed December 3, 2008, petition for review denied March 4, 2009 (346 Or 66)

In the Matter of the Compensation of
Richard G. Pruitt, Claimant.

WASTE MANAGEMENT,
*Petitioner,*

*v.*

Richard G. PRUITT,
SAIF Corporation
and Copenhagen, Inc.,
*Respondents.*

Workers' Compensation Board
03-06370, 03-05293, 03-02734,
03-02733; A133993

198 P3d 429

Theodore P. Heus argued the cause for petitioner. On the briefs were James W. Moller and Scheminske & Lyons, LLP.

Julene M. Quinn argued the cause for respondents SAIF Corporation and Copenhagen, Inc. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Jerome P. Larkin, Special Assistant Attorney General.

Brian L. Welch and Welch, Bruun & Green filed the brief for respondent Richard G. Pruitt.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Sercombe, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

This case presents the interesting issue of the interplay of statutes and rules relating to the compensability of and responsibility for occupational disease claims and consequential conditions. *See* ORS 656.005(7)(a)(A); ORS 656.802. Employer Waste Management (WM) seeks judicial review of an order of the Workers' Compensation Board setting aside its compensability denial of an occupational disease claim and assigning it responsibility for claimant's degenerative condition of the left knee under the last injurious exposure rule. WM contends that it should not be held responsible, because claimant's knee condition is the consequence of an earlier compensable injury with a different employer. We conclude that the board did not err, and affirm.

The facts are undisputed. Claimant has a long history of knee and back problems. This petition for review concerns only claimant's occupational disease claim for degenerative arthritis of the left knee. Claimant suffered a compensable left knee injury in 1976, while working for an employer who is not joined in this proceeding. Claimant's physician diagnosed an "internal derangement of the left knee" and treated the knee with a left knee medial meniscectomy.

In April 1999, while working for SAIF's insured, Copenhagen, Inc., claimant fell onto his knees. His physician diagnosed "[b]ilateral knee contusion on top of chronic medial compartment arthritis[.]" SAIF accepted bilateral knee contusions. At the time of claim closure, claimant's physician stated that claimant had permanent impairment in his knees, due to his preexisting knee conditions.

In November 2002, claimant began working for WM. He was hired as a mechanic, and the work required him to lie on his back, kneel, and climb. After approximately three weeks, claimant began to experience symptoms in his knees and low back, and sought treatment. He did not feel that he could continue working for WM, and he quit his job on December 14, 2002. Claimant saw an orthopedic surgeon, who diagnosed degenerative arthritis and recommended that claimant undergo a left knee replacement surgery. Claimant filed an occupational disease claim for degenerative arthritis of the left knee with SAIF and with WM. SAIF denied the

claim, as did WM, and claimant requested a hearing. An administrative law judge (ALJ) determined that claimant's left knee condition was compensable, but that it was a consequence of his 1976 injury with the employer that had not been joined. For that reason, the ALJ upheld the SAIF and WM denials, and claimant requested board review.

The board reversed the ALJ. Doctors Cook and Steele believed that claimant's 1976 injury and meniscectomy were the major contributing cause of his left knee condition. Both also expressed the opinion that claimant's work activities throughout his lifetime, including the 1976 and 1999 work injuries, as well as his work with SAIF's insured and with WM, contributed to his condition. Relying on those opinions, and citing *Kepford v. Weyerhaeuser Co.*, 77 Or App 363, 367, 713 P2d 625, *rev den*, 300 Or 722 (1986), the board determined that claimant had established the compensability of his left knee condition as an occupational disease under ORS 656.802(2), by proving that this condition was caused by the cumulative effect of his job injuries and the conditions of his employment.[1] The board determined that, although SAIF was presumptively responsible for the claim because claimant first sought treatment for the occupational disease while working for SAIF's insured, *see SAIF v. Kelly*, 130 Or App 185, 880 P2d 970 (1994), responsibility shifted to WM, as the last employment that actually contributed to claimant's condition. *Reynolds Metals v. Rogers*, 157 Or App 147, 153, 967 P2d 1251 (1998), *rev den*, 328 Or 365 (1999).

On judicial review, WM asserts that the board erred in applying the last injurious exposure rule to assign it responsibility for claimant's occupational disease claim,

---

[1] ORS 656.802 provides, in part:

"(1)(a) As used in this chapter, 'occupational disease' means any disease or infection arising out of and in the course of employment * * * including:

"* * * * *

"(C) Any series of traumatic events or occurrences which requires medical services or results in physical disability or death.

"* * * * *

"(2)(a) The worker must prove that employment conditions were the major contributing cause of the disease.

"* * * * *

"(c) Occupational disease claims shall be subject to all of the same limitations and exclusions as accidental injuries under ORS 656.005(7)."

rather than determining, as we did in *SAIF v. Webb*, 181 Or App 205, 45 P3d 950 (2002), that responsibility should be assigned under ORS 656.005(7)(a)(A) to the employer whose employment was the major contributing cause of claimant's condition. The claimant in *Webb* had experienced three compensable injuries to the same knee, which had been accepted by three different insurers. The claimant then developed a degenerative condition of the knee. It was undisputed that the claimant's degenerative knee condition was compensable. It was further undisputed that the knee condition was a consequential condition. The only issue in *Webb* was which of the three insurers should be responsible for the claim. The board found that the first injury was the major contributing cause of the degenerative condition. The board held that, as the insurer responsible for the first injury, SAIF was responsible for the claimant's consequential condition.

SAIF sought to shift responsibility for the claimant's condition to a subsequent employer, under either the last injurious exposure rule or the presumption of *Industrial Indemnity Co. v. Kearns*, 70 Or App 583, 690 P2d 1068 (1984), where we held that when a claimant has had multiple accepted injuries to the same body part, a rebuttable presumption arises that the last injury contributed independently to the worker's worsened condition involving that body part. The two subsequent insurers asserted that the board had correctly held that, under ORS 656.005(7)(a)(A), SAIF was responsible for the degenerative condition because the evidence established that the claimant's injury while SAIF was on the risk was the major contributing cause of the condition. We agreed with the two subsequent insurers that SAIF was responsible for the consequential condition claim. ORS 656.005(7)(a)(A) provides that

> "[n]o injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition."

We explained in *Webb* that, under that statute, liability for a consequential condition falls on the employer with an accepted injury that is the major contributing cause of the consequential condition. 181 Or App at 211.

WM attempts to extend our analysis in *Webb* to this case: If liability for a consequential condition falls on the employer with an accepted injury that is the major contributing cause of the condition, then, necessarily, a condition that is caused in major part by a previously accepted injury is the responsibility of the employer at risk at the time of that accepted injury. There are several reasons why we conclude that the analysis we applied in *Webb* is not applicable here.

The primary distinction is that the two cases depend on separate and distinct theories of compensability. Here, claimant filed a claim for an *occupational disease, i.e.,* a claim that requires proof that his "employment conditions were the major contributing cause of [his occupational] disease." ORS 656.802(2)(a). In *Webb,* the claimant filed a claim for a consequential condition as a result of one of three compensable *injuries.* ORS 656.005(7)(a)(A).

In a consequential condition claim, the claimant seeks to establish that a condition is compensable as a consequence of a previous compensable injury. The claim is compensable if the previous injury is the major contributing cause of the condition. Necessarily, although ORS 656.005(7)(a)(A) does not expressly relate to the assignment of responsibility, responsibility for a consequential condition claim falls on the insurer or employer at risk at the time of the previous compensable injury. Here, by contrast, in his occupational disease claim, claimant did not seek to establish that his degenerative arthritis condition was compensable as a consequence of any particular prior accepted injury. Rather, he sought to connect his knee condition to years of employment activities. ORS 656.802(1)(a)(C) (An occupational disease is "[a]ny series of traumatic events or occurrences.").

WM argues that, despite claimant's chosen theory of compensability, the medical evidence shows that claimant's knee condition is, in fact, a consequential condition because it is a consequence of his 1976 injury. The board expressly rejected WM's argument that the condition was a consequence of a single injury, and that determination is supported by substantial evidence. The board found that "the condition at issue is the degenerative arthritis resulting from

the treatment of the 1976 injury *and subsequent factors, not the 1976 injury itself.*" (Emphasis added.)

As previously noted, ORS 656.802(2)(c) provides, "Occupational disease claims shall be subject to all of the same limitations and exclusions as accidental injuries under ORS 656.005(7)." If claimant had sought to establish the compensability of his occupational disease claim as a consequential condition, *i.e.*, as the consequence of a previously accepted injury—or if the board had determined that the claim was most appropriately characterized as a consequential condition claim—then the claim would be subject to the provisions of ORS 656.005(7)(a)(A), and the compensability of the condition would depend on proof that one of claimant's previous compensable injuries was its major contributing cause. *Webb* would provide guidance in determining which employer should bear responsibility for the claim. However here, unlike in *Webb*, claimant did not seek to establish the compensability of his condition as a consequential condition, *i.e.*, to connect it to a particular accepted injury. He sought to establish the compensability of the condition as an occupational disease caused by all his prior employment conditions, including any previous injuries.

Because the board found that claimant's condition is properly considered as an occupational disease, and not as a consequential condition, *See DiBrito v. SAIF*, 319 Or 244, 248, 875 P2d 459 (1994) (the board's first task is to determine which provisions of the Workers' Compensation Law are applicable), and because the board's determination is supported by substantial evidence, we conclude that the board properly applied the last injurious exposure rule to determine that claimant's degenerative arthritic left knee condition was compensable and which employer should be responsible for that condition.

■ As a rule of responsibility, the last injurious exposure rule presumptively assigns responsibility to the most recent potentially causal employer for which a claimant worked or was working at the time the claimant became disabled or first sought or received medical treatment, whichever comes first. *Bracke v. Baza'r*, 293 Or 239, 248, 646 P2d 1330 (1982). Because claimant first sought treatment for his left knee

arthritis in 1999, while working for SAIF's insured, the board found that presumptive responsibility for claimant's claim lies with SAIF. The board then determined that the medical evidence established that claimant's later employment with WM actually contributed to his condition and, therefore, the board assigned responsibility to WM. *See SAIF v. Hoffman*, 193 Or App 750, 753, 91 P3d 812 (2004) (responsibility will shift to the later employment that independently contributed to the disability). The board's determination is supported by substantial evidence, and we therefore affirm.

Affirmed.