Argued and submitted November 19, 1982, affirmed May 25, 1983

In the Matter of the Compensation
of David Gupton, Claimant.

# STATE ACCIDENT INSURANCE FUND CORPORATION,
*Petitioner,*

*v.*

# GUPTON,
*Respondent.*

(80-02460; CA A24501)

663 P2d 1300

James Francesconi, Portland, argued the cause for respondent. With him on the brief was Doblie, Francesconi & Welch, P.C., Portland.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

SAIF, insurer of Dave's Bunker Hill Shell (Dave's), appeals a Workers' Compensation Board order finding that claimant had proved that his employment at Dave's had worsened his underlying epicondylitis (tennis elbow) and holding SAIF responsible. SAIF contends that, under *Bracke v. Baza'r,* 293 Or 239, 646 P2d 1330 (1982), a subsequent employer is responsible.

Claimant, a 35-year old mechanic, first began having elbow pains while working for Automotive Engineer Repair in 1979. He received injections of xylocaine and hydrocortisone in July, August and September of that year. No claim was made against that employer.

On October 19, 1979, he began working as a mechanic at Dave's. His elbows began to bother him again, and he routinely received injections of hydrocortisone from Dr. Whitney every four to six weeks. In September, the pain grew more acute and interfered with his sleeping. He left work at Dave's sometime in November, 1980, and filed a claim for his "tendinitis" against Dave's on December 1, 1980.

On December 3, 1980, claimant began working for Goodyear. The sleeplessness continued, and the elbow pain became more acute. On January 19, 1981, Dr. Gritzka, his physician in Portland, told him to leave work. He underwent surgery in March, 1981, to correct his elbow problems. He filed no claim against Goodyear.

Dr. Whitney's reports state that claimant's working *as a mechanic* aggravated and caused a recurrence of his tennis elbow. He stated that the natural progression of the disease is that it will improve unless it is aggravated. However, Dr. Gritzka, in a letter to claimant's attorney, related claimant's condition to his employment at Dave's:

> "In my opinion, there is no question that [claimant's] underlying condition of bilateral humeral epicondylitis was made worse due to the work activities at Dave's Bunker Hill Shell Station. The forearm motions, required working as a mechanic, are especially stressful to the epicondylar area, and typically exacerbate underlying epicondylitis or tennis elbow. *I believe, with a reasonable degree of medical probability, that the patient's work activity as a mechanic at Dave's Bunker*

*Hill Shell Station materially contributed to the worsening of the underlying condition of bilateral epicondylitis, to the point that surgery was required."* (Emphasis supplied.)

The referee found that, because claimant suffered no time loss while at Dave's, he was not then disabled and Dave's was not responsible. The Board reversed. Although it found that "the quality of exposure at Goodyear was at least as injurious as that at Dave's Shell,"[1] it said that, so long as claimant has elected to prove and has proved an injury in fact while employed at Dave's, the reasoning in *Bracke* prohibits Dave's from showing that a subsequent employment also exposed claimant to injury.

SAIF first argues that it is not responsible because claimant did not become disabled until he worked for Goodyear. In *Bracke v. Baza'r,* 293 Or at 250, the court held that, in occupational disease cases involving successive employers, liability for the disability is fixed when the disability arises, so long as the conditions of employment are potentially (or actually) causally related to the disease. Here, there is no doubt that claimant's tennis elbow was made worse by his work at Dave's. However, SAIF argues that, because claimant did not undergo surgery or suffer time loss while at Dave's, he was not disabled during that time.

The court in *Bracke* did not make clear how the date of disability is determined. In that case, the day that the claimant sought emergency room treatment for "shortness of breath, rapid breathing and related depression" was determined to be the date of disability, even though her condition of "meat wrapper's asthma" was not then diagnosed and even though it is not clear that she suffered any time loss. The court suggested that, under ORS 656.005(8), the date when symptoms necessitate medical treatment *could* be deemed a triggering date, but it stated that it need not decide that question, because the claimant in that case was suffering "disabling symptoms" when she first sought medical treatment.

ORS 656.005(8)(c) defines a *non-disabling* compensable injury as one which "requires medical services." Under

---

[1] We assume that by this the Board meant that the conditions in both employments *could have* contributed to the disease. There is no medical evidence that the employment at Goodyear *worsened* claimant's condition.

ORS 656.005(8)(b) a *disabling* compensable injury is one "which entitles the worker to compensation for disability or death." The two statutes imply that a disability involves more than medical treatment alone — perhaps, for example, time loss or loss of earning capacity. However, the statutes address *compensability* rather than fix a method for determining *liability* for a disability. They leave open the question of determining the *onset* of disability.

■　In this case, it is clear that, because claimant left his work at Goodyear and subsequently had surgery on his elbows, he suffered a potentially compensable disability within the meaning of ORS 656.005(8)(b). However, the evidence also shows that surgery was recommended or considered while he was working at Dave's.[2] There is nothing in the record to show that claimant's *underlying condition* was made worse by his employment at Goodyear or that that job precipitated the need for surgery. We hold that, because claimant's job at Dave's worsened his bilateral epicondylitis, which culminated in time loss and the need for surgery, the onset of disability began while he was employed at Dave's. *See also United Pacific Ins. v. Harris,* 63 Or App 256, 663 P2d 1307 (1983), where we held that, where claimant's condition was stabilized from the date that she originally sought medical treatment until the time she left work because of failure of her condition to improve, her disability began at the time she originally sought medical treatment.

■　SAIF also argues that the Board erred in its interpretation of *Bracke* in saying that the case

"* * * does not permit the *last employer* against whom a claimant has filed to show that the disease was caused during an earlier employment. * * * Similarly, we do not interpret the reasoning behind *Bracke* to permit an *earlier employer* against whom a claim is filed to show that a subsequent employment also exposed to injury. Therefore even though claimant suffered injurious exposure at Goodyear which was subsequent to

---

[2] In Dr. Whitney's August 5, 1980, medical record, he states that, if claimant "does not show some longer response pretty soon, we may have to surgically correct this." Dr. Gritzka's January 16, 1981, medical record states that "I think this patient will probably require bilateral Bosworth procedures. These have been recommended in the past but his claim has been contested by SAIF and therefore he didn't have it done."

the injurious exposure at Dave's Shell, Dave's Shell is not permitted to contend that Goodyear is responsible." (Emphasis in original.)

Although we agree that the Board misapplied the rule in *Bracke, SAIF v. Luhrs,* 63 Or App 78, 663 P2d 418 (1983), that makes no difference to the result in this case. *Bracke* states that an employer may shift liability to a later employer *if* the later employment "contribute[s] to the cause of, aggravate[s], or exacerbate[s] the underlying disease." 293 Or at 250. There is no evidence that claimant's underlying condition was worsened by his employment at Goodyear. The necessary condition for the shifting of liability under *Bracke* has not been met.

Affirmed.