Argued and submitted May 16, reversed and remanded October 24, 1984, reconsideration denied March 1, petition for review denied April 2, 1985 (299 Or 31)

In the Matter of the Compensation of
James Guse, Claimant.

GUSE,
*Petitioner,*

*v.*

ADMINCO et al,
*Respondents.*

(81-06833, 81-11397; CA A29908)

689 P2d 1044

Evohl F. Malagon, Eugene, argued the cause for petitioner. With him on the brief was Malagon & Associates, Eugene.

Darrell E. Bewley, Assistant Attorney General, Salem, argued the cause for respondent SAIF Corporation. With him

on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Patric J. Doherty, Portland, argued the cause for respondent Adminco. With him on the brief were Ronald W. Atwood and Rankin, McMurry, VavRosky & Doherty, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Claimant appeals from an order of the Workers' Compensation Board affirming the referee's order upholding the insurers' (Adminco and SAIF) denials for claimant's hearing loss. We hold that claimant has established by a preponderance of the evidence that SAIF is responsible for his hearing loss and reverse.

Claimant is a 48-year-old man who has been employed by the Eugene Police Department since March, 1960. In 1959, claimant had his hearing tested in the Army and a binaural loss of less than 1 percent was noted. Sometime prior to 1970, claimant was working on a police car at the city hall. While he was working under the hood of the vehicle, the siren went off next to his ear. He testified that he has had constant tinnitus from that day to the present. From 1960 to 1970, claimant was in the patrol division and rode a motorcycle, which had a siren mounted on the rear. He had no ear protection. Throughout his employment, he was required to qualify with firearms twice a year. From 1960 to 1970, the firearm practice took place in the downstairs portion of the city hall, which had some acoustical tile. From 1970 to 1975, that practice took place at the armory, which had no acoustical tile and had a low ceiling with "high echo" concrete floors, making for a very noisy environment. No hearing protection was provided for those who were waiting to shoot, and very little protection was provided for those who were engaged in shooting. The hearing protection provided to claimant did not fit him properly, because his glasses interfered. While waiting to shoot, he would be 10 to 15 feet away from the person firing. Two to four people would fire at a time. Claimant fired a .38 caliber pistol primarily, but others fired .357 magnums. In 1976, the firearm qualification was removed to the outside, where conditions were "100 percent better," according to claimant.

Claimant first noticed a problem with his hearing in 1975 to 1976, causing him to seek help from the Health Services of Lane Community College. He was referred to the University of Oregon for a series of hearing tests that revealed that he had a binaural loss of 13 percent. In 1980, claimant's hearing was retested, revealing a binaural loss of 18.3 percent. Claimant testified that after 1976, when he became conscious

of his hearing loss, he took steps to protect his ears from further loss while on duty. He testified that he had never had an ear infection in his life. There is no evidence of off-work noise exposure.

■ The medical evidence consists of the contradictory opinions of Dr. Conway and Dr. Ediger. The referee accepted the report of Dr. Conway over that of Dr. Ediger, because, in part at least, of claimant's alleged failure to establish Dr. Ediger's qualifications. It is true that the record contains no information regarding Dr. Ediger's education or training, other than that contained in one letter, which notes that he is the director of Audiological Services for the Eugene Hearing and Speech Center and lists after his name the initials Ph.D. and CCC-A. Although we agree that it would have been preferable for claimant to have established more fully Dr. Ediger's qualifications, we believe that the designation "CCC-A," which indicates that Dr Ediger has a certificate of clinical competence in audiology, is sufficient to establish that he is qualified to give an opinion on the issue of the cause of claimant's hearing loss.

■ Dr. Ediger stated in his report that, after he had subtracted from all of the calculations hearing loss that is normally attributable to age, it appeared "that more hearing loss has occurred from 1959 to 1980 than can be attributable to the aging process." He further stated that he had not taken claimant's employment history, but that if such history revealed that claimant was exposed to loud noises at work and was not exposed to similar noises at home, claimant's hearing loss is probably the result of an occupational disease.

Dr. Conway stated that the pre-1970 incident, when the siren went off near claimant's ear, could have produced permanent damage to claimant's ear. However, he believed that claimant's hearing loss was not due to noise exposure, because the profile and hearing curve and the history of a gradual progression of claimant's hearing loss did not indicate that exposure as the cause. He concluded that claimant's hearing loss was the natural result of aging. However, he stated that when hearing loss is due to premature aging, one should be able, microscopically, to see the absence of hair cells in the inner ear, yet he was not able to identify that microscopic damage in claimant's ears.

By his own admission, Dr. Conway could not identify objectively the changes that should have been observable if his diagnosis of premature aging was correct. We find more persuasive Dr. Ediger's conclusion that claimant is suffering from an occupational disease. The history of claimant's noise exposure at work supports that conclusion.

The remaining issue is whether SAIF or Adminco is responsible for claimant's hearing loss. SAIF is responsible for insurance coverage prior to 1979, and Adminco is the responsible insurer thereafter. It is clear that claimant became disabled when he noticed the hearing loss and sought medical treatment for it in 1976 when SAIF was responsible. That responsibility does not shift under the last injurious exposure rule unless claimant's condition was aggravated or exacerbated during the period when Adminco provided coverage. *Boise Cascade Corp. v. Starbuck*, 296 Or 238, 675 P2d 1044 (1984); *SAIF v. Gupton*, 63 Or App 270, 663 P2d 1300 (1983). We conclude that the preponderance of the evidence establishes that claimant's condition was not worsened by exposure from 1979 or thereafter. The record establishes that the 1976 conditions to which claimant was exposed at work were noninjurious. After that date, claimant used adequate ear protection and fired his pistol only when he was on an outside range where acoustical conditions were "100 percent better." In addition, after claimant became aware of his hearing loss in 1976, he took precautions to protect his ears from loud noises. Consistent with those facts is the conclusion of Dr. Conway, who stated that the difference in hearing loss recorded in the 1976 and 1980 tests was not significant and that claimant had not been exposed to noise since 1976 that could have damaged his hearing. Accordingly, claimant's hearing loss is the responsibility of SAIF.

Reversed and remanded for acceptance of hearing loss claim by SAIF.