Argued and submitted April 15, reversed and remanded July 13, reconsideration denied August 13, petition for review denied October 20, 1981 (291 Or 771)

In the Matter of the Compensation
of Earl W. Perdue, Claimant.

**PERDUE,**
*Petitioner,*

*v.*

**STATE ACCIDENT INSURANCE FUND
CORPORATION,**
*Respondent.*

(WCB No. 79-6785, CA 19342)

631 P2d 346

Quentin D. Steele, Klamath Falls, argued the cause and filed the brief for petitioner.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent. With him on the brief were K.R. Maloney, General Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund Corporation, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

**THORNTON, J.**

The principal question in this case is whether claimant suffered an aggravation of a January 13, 1977, lumbar strain or a new injury when, on April 9, 1979, he wrenched his back while turning over to climb out from under a house where he had been tearing out a rotted floor joist. The former injury occurred while claimant was employed by a contractor covered by SAIF. The second occurred while he was self-employed and uninsured. The referee found that the medical evidence pointed to the conclusion that a new injury had occurred, and the Board adopted this determination. We conclude to the contrary and reverse. Claimant also seeks penalties and attorney fees for alleged unreasonable delay in payment of compensation and in denying his claim.

The first injury was sustained when he fell off an icy roof and landed on his back. That injury was diagnosed as "lumbar-lumbosacral paravertebral strain" by Dr. Davis, claimant's chiropractor. He was treated for three months and released, first for light labor and then entirely. The claim was accepted, and no permanent disability was awarded. Between the first and second injuries, claimant was not completely symptom-free; he bought a waterbed and on occasion used a back support. He was able to work but paid particular attention to the manner in which he lifted things or avoided lifting altogether if he could.

The second injury happened just as he turned to crawl out from under the house. His legs were temporarily paralyzed and he dragged himself out by his hands. Presently, he cannot do some of the tasks he was able to do after the first injury *(e.g.,* lifting a pre-hung door or carrying roof shingles up a ladder). He was given the same treatments by Dr. Davis as for his first strain, and Dr. Davis wrote to SAIF stating:

"* * * * *

"Mr. Perdue had a previous industrial injury on January 13, 1977. In my opinion, his condition is worse since the last arrangement of compensation. His impairment is more severe, in that he was medically stationary on April 11, 1977, and is now suffering from exacerbation of previous symptoms; pain in the lumbar-lumbosacral spine.

"* * * * *

"In my opinion, these symptoms are a *reaggravation of his original injury of January 13, 1977.* Mr. Perdue is claiming no time loss, and is under treatment in this office." (Emphasis added.)

On May 22, 1979, at SAIF's request, claimant was examined by Dr. Casey, an orthopedist, who reported:

"\* \* \* \* \*

"Today [claimant] states that his back is essentially back to normal, but he does not do any lifting due to his desire not to reinjure it. However, he can do his work, other than lifting, and can do various recreational activities without discomfort.

"\* \* \* \* \*

"Repeat x-rays were taken as his last set taken by Dr. Davis was in early 1977, and show a normal lumbar spine.

"Impression: Normal spine exam."

On July 26, SAIF, which had previously accepted the claim as an aggravation, denied further payment on the ground that it was a new injury. On September 25, claimant was examined by Dr. Campagna, a neurologist, who stated, following a review of claimant's medical records:

"\* \* \* \* \*

"Most recently, the patient has had recurrence of his low back pain which started approximately two weeks ago without trauma. He has been seeing Dr. Davis three times a week and is continuing to work. He complains of low back pain that has improved somewhat with the treatments. He will have sharp pains down the posterior aspect of the right leg occasionally. He denies left leg problems. No numbness has been noted. Bending, stooping and lifting will aggravate the back pain. He notes coughing aggravates his back pain. He denies bowel or bladder problems. Sleeping in a water bed gives relief, and a back brace gives relief while he is working.

"\* \* \* \* \*

"*X-rays:* Normal chest. Normal lumbar spine.

"*IMPRESSION:* Chronic lumbar sprain secondary to industrial accident of January 13, 1977.

"*RECOMMENDATION:* The present conservative therapy should be continued."

The referee concluded a new injury had occurred:

"The claimant was engaged in rather strenuous work activities, lying on his back, reaching up to pull out rotten

pieces of floor joists, then rolling over to crawl out from the obviously limited space."

He relied on *Smith v. Ed's Pancake House,* 27 Or App 361, 364, 556 P2d 158 (1976), in which we quoted from 4 Larson, *Workmen's Compensation Law,* § 95.12 (1976):

"* * * * *

" 'If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. In this class would fall most of the cases discussed in the section on range of consequences in which a second injury occurred as the direct result of the first, as when claimant falls because of crutches which his first injury requires him to use. *This group also includes the kind of case in which a man has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.*

" 'On the other hand, if the second incident contributes independently to the injury, the second insurer is solely liable, even if the injury would have been much less severe in the absence of the prior condition, and even if the prior injury contributed the major part to the final condition. This is consistent with the general principle of the compensability of the aggravation of a pre-existing condition.' " (Emphasis added.)

The evidence in this case seems to coincide exactly with the emphasized language from *Larson.* Both Drs. Davis and Campagna stated plainly that the April 9, 1979, injury was an aggravation of the earlier compensable back condition. All doctors agreed that back x-rays showed a normal spine. The symptoms,[1] diagnoses and treatments were virtually identical for both injuries and the symptoms

---

[1] The referee noted that Dr. Casey's report states that the pain felt by claimant when rolling over to crawl from beneath the house did not radiate down his legs, contrary to claimant's testimony at the hearing. We have found no testimony by claimant that the April 9, 1979, injury caused pain to radiate down his leg. Even so, we cannot tell what inference the referee drew from the purported conflict *(e.g.,* that claimant was not credible). Claimant did testify with regard to the first injury that it produced cramps and numbness in his right leg. Whether or not he had similar symptoms in his right leg as a result of the second incident might bear on the likelihood that a new injury to another part of claimant's body had occurred, but that is irrelevant in this case.

persisted between the two incidents. There is no evidence in this case that claimant sustained any additional trauma to his back. It shows only that he suffered a sudden aggravation of symptoms, worse than the first time, suggesting that his chronic back sprain has worsened and might now limit his ability to work to some extent. We conclude an aggravation occurred and remand the claim for acceptance on that basis.

■ On the question of penalties, neither the Board nor the referee addressed the matter, although a determination of the point was requested by claimant at both levels. ORS 656.262(5) requires an insurer to accept or deny a claim within 60 days after obtaining notice. On April 17, 1979, SAIF received Dr. Davis' initial letter report stating the claimant sustained a "re-aggravation" of his original injury, which qualified as a claim for aggravation. ORS 656.273(3). ORS 656.262(8) authorizes imposition of penalties and attorney fees (to the extent recoverable under ORS 656.382(1)) where an insurer "unreasonably delays acceptance or denial of a claim * * *." Dr. Casey's report was written on May 22 and apparently received by SAIF on May 29. Thereafter, insofar as the record shows, SAIF neither received nor requested additional medical evidence. Nevertheless, it did not deny the claim until July 26, about 40 days beyond the 60 days after April 17 allowed by statute, although compensation was apparently paid in the interim as required by ORS 656.262(4). We conclude that that constituted unreasonable delay in denying the claim, and we assess a ten per cent penalty to be reckoned on the benefits to which claimant is found to be entitled on remand.

■ We conclude claimant is entitled to no additional attorney fees under ORS 656.382(1)[2] because the failure to deny the claim within 60 days does not, in this instance,

---

[2] ORS 656.382(1) states:

"If a direct responsibility employer or the State Accident Fund Corporation refuses to pay compensation due under an order of a referee, board or court, or otherwise unreasonably resists the payment of compensation, the employer or corporation shall pay to the claimant or his attorney a reasonable attorney's fee as provided in subsection (2) of this section. To the extent a contributing employer has caused the corporation to be charged such fees, such employer may be charged with those fees."

amount to unreasonable resistance in the payment of compensation. Interim payments were being made.

Reversed and remanded.