In the Matter of the Compensation of
Mercedes Evans, Claimant.

## FRED MEYER, INC.,
*Petitioner,*

*v.*

## BENJAMIN FRANKLIN SAVINGS
## & LOAN et al,
*Respondents.*

(82-04068, 82-10141; CA A32087)

700 P2d 257

Patric J. Doherty, Portland, argued the cause for petitioner. With him on the brief were Karli L. Olson and Rankin, McMurry, VavRosky and Doherty, Portland.

Gail M. Gage, Salem, waived appearance for respondent Mercedes Evans.

William H. Stockton, Hillsboro, argued the cause and filed the brief for respondents Benjamin Franklin Savings and Loan and United Pacific Insurance Co.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

## YOUNG, J.

This workers' compensation case involves the issue of which of two employers is responsible for claimant's occupational disease claim. ORS 656.802 - 656.807. The Board affirmed a referee's order that found petitioner to be the responsible employer. Fred Meyer seeks judicial review of the Board's order and order on reconsideration. We review *de novo* and affirm.

The parties do not dispute the referee's findings of fact. Fred Meyer's argument is that the medical evidence establishes that claimant's work activities while employed by respondent Benjamin Franklin Savings and Loan aggravated or exacerbated her underlying chronic myofascitis condition. If it does, under *Bracke v. Baza'r,* 293 Or 239, 646 P2d 1330 (1982), responsibility shifts to Benjamin Franklin, the second employer.

In 1967 and 1970, claimant was involved in motor vehicle accidents and, on both occasions, suffered acute cervical strains. Dr. Eckhardt, an orthopedist, treated her conservatively, and she recovered without any residual impairment or disability. In 1975, claimant was employed by Fred Meyer as a grocery checker. In December, 1976, as a result of problems associated with the overhead use of her arms and lifting, she returned to Dr. Eckhardt. He diagnosed chronic myofascitis in the right suprascapular area, causing nerve impingement that resulted in abnormal sensations in the right forearm and right hand. She was again treated conservatively and returned to work in February, 1977. In May, she quit her job at Fred Meyer. In June, Dr. Eckhardt reported that claimant was developing carpal tunnel syndrome.

From November, 1977, through January, 1978, claimant was evaluated at the Disability Prevention Center. Dr. Azavedo diagnosed a chronic cervico-dorsal strain and concluded that claimant had a slight permanent physical impairment. In May, 1978, a determination order awarded temporary total disability and a 5 percent unscheduled permanent partial disability, chargeable to Fred Meyer. In June, 1978, claimant enrolled in a vocational rehabilitation program to be trained as a kindergarten teacher. Some of the tasks necessary for that training, however, activated her symptomatology. She

completed the program and, in July, 1980, a second determination order awarded additional temporary total disability benefits.

Claimant's vocational counselor referred her to Job Seekers, who in turn referred her to Benjamin Franklin for employment. In October, 1980, Benjamin Franklin hired her as a teller. Dr. Eckhardt had recommended that she avoid teller work, which required her to stand most of the time. She handled financial transactions, filed and typed at a computer terminal. Three months after she commenced employment, she noticed that her symptomatology had returned. Additionally, for the first time she noticed that riding in certain car seats made her nauseated. In June, 1981, she was examined by Dr. Gritzka. He reported that she had activated her cervical sprain by prolonged forward flexion. On June 10, claimant quit work at Benjamin Franklin.

Claimant subsequently filed an aggravation claim against Fred Meyer and an occupational disease claim against Benjamin Franklin. Both employers denied responsibility. Benjamin Franklin also asserted that claimant had failed to file her claim timely. The referee concluded that Fred Meyer was the responsible employer:

> "Claimant's original claim at Fred Meyer resulted in permanent impairment and disability for which she received an unscheduled permanent partial disability award. Her treating doctor placed certain specific working restrictions and limitations upon her. Dr. Eckhardt recognized claimant would encounter predictable problems if she nonetheless attempted to perform those activities which would result in a flare-up of her symptomatology. * * * [I]t is clear claimant's work activities at Benjamin Franklin were related to her need for continuing medical care and treatment. But any such activities inevitably would have led to continued medical care. *SAIF Corp. v. Baer,* 60 Or App 133 (1982). Finally, I conclude that there is no persuasive medical evidence supporting Fred Meyer's contention that claimant's employment activities at Benjamin Franklin contributed to the *causation* of the disabling condition. *SAIF Corp. v. Brewer,* 62 Or App 124 (1983); *Boise Cascade Corp. v. Starbuck,* 61 Or App 631 (1983); *Perdue v. SAIF,* 53 Or App 117 (1981)." (Emphasis in original.)

The Board adopted the referee's opinion and affirmed.

Essentially, Fred Meyer argues that the medical evidence shows that claimant's work at Benjamin Franklin "aggravated" her chronic myofascitis in her upper back and neck. *Bracke v. Baza'r, supra,* states the test:

> "A recurrence of symptoms which does not affect the extent of a continuing underlying disease does not shift liability for the disabling disease to a subsequent employer." 293 Or at 250.

Therefore, the issue is whether claimant's work at Benjamin Franklin affected the extent of her continuing underlying disease. The court in *Bracke* analyzed that question by examining the evidence to determine whether the subsequent employment "aggravated or exacerbated" the underlying disease. 293 Or at 250.

We conclude that the evidence does not preponderate that claimant's work at Benjamin Franklin affected the extent of her chronic myofascitis. Relying on Dr. Eckhardt's reports, Fred Meyer argues that the medical evidence is "undisputed" that claimant's occupational disease was "aggravated." While those reports do use the terms "aggravated" and "worsening," when they are taken as a whole, it is apparent that Dr. Eckhardt was referring to an increase in symptomatology, something about which he had warned claimant before she accepted the job at Benjamin Franklin. Her statements that she seemed to have more limitations after her work at Benjamin Franklin, although probative, do not demonstrate that the *extent* of her chronic myofascitis was worsened as a result of the later employment.

Affirmed.