Argued and submitted April 21, affirmed July 30, 1986

In the Matter of the Compensation of
Darlene L. Stephens, now known as
Darlene L. Youngblood, Claimant.
## JAMES RIVER CORPORATION,
*Petitioner,*

*v.*

## YOUNGBLOOD et al,
*Respondents.*

(WCB 83-02302, 83-02414 & 83-05679; CA A36332)

722 P2d 1286

Patric J. Doherty, Portland, argued the cause for petitioner. With him on the brief were Ronald W. Atwood, and Rankin, McMurry, VavRosky & Doherty, Portland.

Howard R. Nielsen, and Vick & Associates, Salem, filed the brief for respondent Youngblood.

Craig A. Staples, Portland, argued the cause for respondents American Can Company and Wausau Insurance Companies. On the brief were Gordon T. Clark, and Roberts, Reinisch & Klor, P.C., Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

The sole issue in this Workers' Compensation review is which employer is responsible for claimant's compensable occupational disease. Claimant has worked in different positions at the same paper mill since 1977. Until 1982, the mill was owned by respondent American Can Company, which was insured by respondent Wausau Insurance. In July, 1982, petitioner James River Corporation purchased the mill. Claimant filed claims in 1978, 1979, 1982 and 1983, all relating to pain in her neck and left shoulder diagnosed as thoracic outlet syndrome. Wausau accepted responsibility for the claims filed in 1978, 1979 and 1982, but denied responsibility for the 1983 claim. James River contends that the disabling onset of increased pain in 1983 was merely an increase of symptoms of the same underlying condition, and that Wausau remains responsible. Wausau argues that the underlying condition worsened as a result of plaintiff's work activities in March, 1983, and that James River is responsible.

A hearing was held pursuant to ORS 656.307. The referee found that claimant's occupational disease had worsened while she was employed by James River and that her work activities in 1983 caused that worsening. The Board affirmed, recognizing that the case presented a close question, but concluding that the preponderance of the evidence showed that claimant's underlying condition had worsened. We affirm.

During her first two years at the mill, claimant worked at a napkin wrapping machine, which required twisting and repetitive hand and arm movements as she bundled napkins and placed them on a conveyor belt. Her condition first manifested itself in April, 1978, when she complained of a pulled shoulder muscle. Her claim for medical treatment benefits was accepted as nondisabling. In November, 1978, she complained of back pain and pain in her neck and left shoulder, with tingling in her left arm and forearm. She was seen by Dr. Gerstener, a general surgeon who has acted as plant physician. He diagnosed thoracic outlet syndrome of a moderate degree and advised her to perform back and shoulder exercises. No claim for time loss was made.

Claimant continued to work at the napkin machine and suffered another onset of pain and numbness in

November, 1979. She filed a claim for time loss beginning in December, 1979, when her chiropractor advised that she was disabled due to her work activities. She was seen by Gerstener in February, 1980, for evaluation. He again diagnosed thoracic outlet compression and recommended physical therapy and time off from work. Claimant testified that, after her initial time off in December, 1979, she returned to work briefly at the napkin machine but immediately suffered an increase in pain and again left work. She did not return to work until late February, 1980, when she was assigned to duties which did not require highly repetitive arm movements.

Claimant testified that she was not completely free of pain during the period from February, 1980, to September, 1982, but that she lost no time from work due to her thoracic outlet condition. In September, 1982, she was assigned to a new position involving relief duties at a tissue wrapping machine, which required twisting to left and right and repetitive arm movements at or above shoulder level as she removed packages from the machine and stacked them in carts. Within a few days, claimant suffered a significant increase in pain and sought treatment from her chiropractor. She was off work from September 11, 1982, until October 29, 1982.[1]

When claimant returned to work in late October, 1982, her duties did not involve repetitive arm movements. However, in March, 1983, she was reassigned to duties similar to those she had performed in September, 1982, including relief work at the tissue wrapping machine. She suffered an immediate increase in pain, and after five days she was unable to work. She filed this claim.

The dispositive issue is whether claimant's work activities in 1983 caused a worsening of her thoracic outlet syndrome or whether there was a recurrence of symptoms which did not reflect a progression of the underlying disease. *Bracke v. Baza'r,* 293 Or 239, 250, 646 P2d 1330 (1982). Responsibility for a claimant's disability does not shift to a

---

[1] Although claimant was then employed by James River Corporation, her claim for medical treatment and time loss benefits was accepted by Wausau which concedes that, under the rule in *Bauman v. SAIF,* 295 Or 788, 670 P2d 1027 (1983), it could not later deny its responsibility for the September, 1982, claim. That period of disability is not at issue here.

subsequent employer unless later work activities "contribute to the cause of, aggravate, or exacerbate the underlying disease." *Bracke v. Baza'r, supra,* 293 Or at 250. A mere increase in symptoms does not demonstrate that the underlying disease has worsened. *Fred Meyer v. Benjamin Franklin Savings & Loan,* 73 Or App 795, 700 P2d 257 (1985).

Gerstener provided the only expert opinion specifically addressing the relationship between claimant's complaints and her underlying thoracic outlet compression condition. In his reports and deposition, he described the increased pain in March, 1983, as a "worsening," "aggravation," "exacerbation" and "progression" of the underlying disease. He indicated that thoracic outlet syndrome typically does not worsen in the absence of certain activities and that the work activities claimant performed in September, 1982, and in March, 1983, involved the sort of movement which would cause a worsening of her condition. He also testified that claimant's work activities were the major contributing cause of a worsening of her syndrome and stated that the compression, which caused the pain and tingling, was itself greater as a result of the work activities.

Petitioner contends that Gerstener's testimony is not persuasive evidence, because it is inconsistent. He did state that claimant's underlying condition was the same in 1978 as it was in 1983, even though there have been aggravations and increased symptoms since 1978. Further, he indicated that the only manifest change was an increase in the frequency and duration of pain and discomfort. However, he also testified that there would have had to be a change in the underlying condition for there to be an increase in symptoms.

We conclude, on the basis of Gerstener's statements as a whole, that his testimony is convincing that claimant's work activities caused increased compression and the worsening of her underlying condition, which resulted in increased pain and discomfort. Although this case presents a close question, the preponderance of the evidence proves that claimant's occupational disease worsened while she was employed by James River Corporation which is therefore responsible for her claim for time loss and medical benefits subsequent to March 11, 1983.

Affirmed.