Argued and submitted June 2, reversed on petition and cross-petition; referee's order reinstated October 8, 1986

In the Matter of the Compensation of
Sylvia A. Weaver, Claimant.

INDUSTRIAL INDEMNITY COMPANY,
*Petitioner - Cross-Respondent,*

*v.*

WEAVER,
*Respondent - Cross-Petitioner,*
*and*

EBI COMPANIES et al,
*Respondents.*

(WCB No. 84-01115, 84-04251 & 84-04252; CA A36260)

726 P2d 400

John E. Snarskis, Portland, argued the cause and filed the briefs for petitioner - cross-respondent.

Marianne Bottini, Portland, argued the cause and filed the brief for respondent - cross-petitioner.

Nancy J. Meserow, Beaverton, filed the brief for respondent Wausau Insurance Company.

R. G. Rice, Portland, argued the cause for respondent EBI Companies. With him on the brief was Beers, Zimmerman & Rice, Portland.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Industrial Indemnity, employer's present insurer, seeks review of a Workers' Compensation Board order holding it responsible for claimant's left foot condition. Claimant cross-petitions from that portion of the order which reversed the referee's award of penalties and attorney fees for Industrial Indemnity's unreasonable denial of compensability.[1] We reverse on the petition and on the cross-petition.

Claimant worked for the Greenwood Inn as a waitress from 1975 through the time of the hearing. In 1977, she filed a claim for an occupational disease known as Morton's neuroma. Employee Benefits Insurance (EBI), employer's insurer at that time, accepted the claim. Claimant's treating podiatrist, Dr. Fraser, prescribed orthotics, which relieved the pain in her right foot. The problems with her left foot continued. In November, 1977, Fraser performed a neurectomy on the second and third intermetatarsal spaces of claimant's left foot. Following the surgery, claimant consulted Dr. Livingston, who noted that it is not unusual following neuroma surgery for a patient to have chronic pain in the area. Claimant experienced some relief following the surgery, but her pain gradually increased.

In July, 1978, Fraser performed a second neurectomy. Claimant again experienced some relief, but pain returned again after several months. Two other doctors concluded that her condition was stationary but that she could not return to her previous work without limitations. In November, 1978, Fraser reported that he had detected a palpable mass at the base of claimant's second toe. He noted that further intervention might be necessary.

In January, 1979, claimant's claim was closed by a determination order which awarded her temporary disability benefits and 10 percent scheduled disability for loss of the use of her left foot. Her foot problem continued. In April, 1980, Fraser treated her with injections. Her claim was reopened and then closed again with an additional award of time loss benefits. EBI continued to insure the Greenwood Inn through

---

[1] We note that the Board reversed the referee's award of penalties and attorney fees with respect to both Industrial Indemnity and Wausau, but claimant's cross-petition addresses only Industrial Indemnity.

February, 1982. Wausau Insurance Co. was Greenwood's insurer from March 1, 1982, through February, 1983. Industrial Indemnity assumed the risk on March 1, 1983.

Claimant did not seek further medical treatment until February 22, 1983. In the intervening years, her foot pain continued to increase. Claimant described herself as able to tolerate a great deal of pain, but she finally sought treatment again, because she was having pain every day, all day, and could no longer tolerate the pain. Fraser treated her with a different kind of orthotic and later recommended further surgery.

In November, 1983, Dr. Wilson, a neurologist, examined claimant. He agreed that surgery was necessary and stated: "This surgery was probably the result of her continued work at the Greenwood Inn." In April, 1984, Dr. Thomas, an orthopedist, examined claimant. He diagnosed "metatarsalgia, status post neurectomy." He reported:

> "[T]he present problem is a natural progression of her initial injury and, although there is an increase in pain, it is at the same location and the same type of pain as she initially had. The patient's work since 1978 increased her symptoms but did not affect her condition. The initial problem relates back to 1976 and 1977."

The referee found that claimant's continued work activity increased her symptoms but did not affect the underlying disease process. He concluded that "there is nearly medical consensus [that] claimant's situation in 1983 and '84 was an aggravation of the occupational disease claim of 1976." He remanded the claim to EBI for processing.

The Board modified the referee's order with regard to carrier responsibility, concluding that Industrial Indemnity was responsible for claimant's current condition. It found that the underlying disease had worsened due to her employment after EBI was no longer responsible and that her condition continued to worsen between February, 1983, and the hearing. The Board concluded that, because the worsening could have occurred during Industrial Indemnity's coverage, and because Industrial Indemnity did not prove that claimant's activities during EBI's and Wausau's coverage were the sole cause of her problem, Industrial Indemnity was the responsible carrier.

■ We must determine whether claimant's work during the period when the later insurers were responsible worsened claimant's underlying condition, not just her symptoms. *See Bracke v. Baza'r,* 293 Or 239, 646 P2d 1330 (1982); *Fred Meyer v. Benjamin Franklin Savings & Loan,* 73 Or App 795, 700 P2d 257, *rev den* 300 Or 162 (1985). We find that claimant's underlying condition did not worsen. From a time shortly after her second surgery until the hearing, she has suffered the same kind of pain, although it became worse. She has also had a clinically palpable mass between her toes, which was detected while EBI was still the responsible carrier. The medical evidence indicates that, although claimant may now have more pain and the mass may be larger, her underlying condition, Morton's neuroma, has not worsened. Liability for the disability caused by the underlying disease was fixed when the disability arose, *Bracke v. Baza'r, supra,* 293 Or at 250, and when EBI was the responsible carrier and accepted the occupational disease claim. Her work while Wausau and Industrial Indemnity were the responsible carriers merely aggravated the symptoms but did not contribute to the underlying disease. EBI is responsible.

Claimant seeks review of that portion of the Board's order reversing the referee's imposition of penalties and carrier-paid attorney fees for Industrial Indemnity's denial of the compensability of her claim. On January 20, 1984, EBI denied responsibility for claimant's condition. On February 29, Industrial Indemnity denied both the compensability of and responsibility for the claim. On April 19, Industrial Indemnity notified the Workers' Compensation Department that it had clarified the medical status of claimant's claim and that it no longer questioned compensability. On May 25, a ".307" order, ORS 656.307, was issued, designating Industrial Indemnity as the paying agent. Claimant sought penalties and attorney fees for the unreasonable denial of compensability. The referee awarded them after finding that the denial was unreasonable and that it had forced claimant to delay her surgery. The Board reversed that portion of the referee's order, finding that the denial was timely and that the referee was without authority to impose the penalties and attorney fees.

■■ A penalty may be imposed if an insurer's denial of compensation was unreasonable. *Price v. SAIF,* 73 Or App

123, 126-27, 698 P2d 54 (1985); *Norgard v. Rawlinsons,* 30 Or App 999, 1003-04, 569 P2d 49 (1977). Industrial Indemnity denied compensability, claiming that it had not had an opportunity to conduct an independent medical evaluation. However, the Compliance Division had ordered the three carriers to share file information. Industrial Indemnity had available to it sufficient information to indicate whether claimant's foot problem was a continuation of the occupational disease and was associated with her work, and nothing indicated anything to the contrary. We agree with the referee that Industrial Indemnity should have had no question that one of the three carriers was responsible for the new episode and the need for surgery. The Board erred in determining that the referee was without authority to impose a penalty against Industrial Indemnity.

Reversed on petition and cross-petition; referee's order reinstated.