Argued and submitted March 17, affirmed May 10, 1995

In the Matter of the Compensation of
Anne M. Maley, Claimant.

Steven E. TIMM, D.M.D.,
*Petitioner,*

*v.*

Anne M. MALEY;
SAIF Corporation;
SAIF Corporation (NCE);
and CNA Insurance Companies,
*Respondents.*

(91-09137, 90-06629, 91-03931, 91-02379; CA A85268)

894 P2d 1245

James L. Edmunson argued the cause and filed the brief for petitioner.

Gene Platt argued the cause for respondent CNA Insurance Companies. With him on the brief was Cummins, Goodman, Fish & Peterson, P.C.

David W. Hittle and Burt, Swanson, Lathen, Alexander, McCann & Smith waived appearance for respondent Anne M. Maley.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Steven Cotton, Special Assistant Attorney General, waived appearance for respondent SAIF Corporation (NCE).

Jerald P. Keene and Roberts, Reinisch, Mackenzie, Healey & Wilson, P.C., waived appearance for SAIF Corporation.

Before Richardson, Chief Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

## EDMONDS, J.

Steven Timm, the noncomplying employer (Timm (NCE)), seeks review of the Workers' Compensation Board's order, entered after we remanded for reconsideration, *Timm v. Maley*, 125 Or App 396, 401, 865 P2d 1315 (1993), holding that he was responsible for claimant's claim. Timm (NCE) asserts that the order is not supported by substantial evidence. ORS 183.482(7); *Armstrong v. Asten-Hill Co.*, 90 Or App 200, 206, 752 P2d 312 (1988). We affirm.

Timm (NCE) was insured by CNA Insurance Companies (CNA) from October 1986, to March 17, 1988. He was in noncomplying status from March 18, 1988, to September 22, 1988. Beginning September 23, 1988, he was insured by SAIF Corporation (SAIF). Claimant worked for Timm (NCE) as a dental assistant from October 1983 to May 1989. She has a history of nonwork-related back injuries that resulted in her receiving sporadic chiropractic treatment both before and after she began working for Timm (NCE). Complaining of significant new pain and numbness in her left leg and foot, claimant began receiving treatment from Dr. Mann on September 25, 1987. On the first visit, Mann noted tightness in her back and tenderness in her left sacroiliac. He diagnosed her condition as a hypermobile left sacroiliac with chronic left sacroiliac ligament sprain and secondary low back tightness.

Mann's notes reveal that claimant's condition remained relatively the same for several months after that time. Then in May 1988, Mann reported:

> "The patient's course changed dramatically in early May of 1988 with complaint of marked exacerbation of pain. * * * She had marked limitation in range of motion of the low back with generalized tenderness of the sacroiliac areas. * * * The patient's pain did not seem to respond to aggressive therapy and her pain behavior seemed to become quite dramatic until our last visit of 7/12/88 after which she was not seen until 2/13/89."

Mann's notes on May 9, 1988, also report that the tenderness in claimant's left sacroiliac radiated to the sacrotuberous area and that she had "occasional vague radicular symptoms into the legs." He concluded:

"I do feel that the job as a dental assistant and the positioning she was in for many years had a definite major impact on the previous underlying problem and that her medical needs and requirements for care would not have existed without this repeated stress."

Also, in mid-May, claimant cut back her work hours because of her back problems. In June, claimant filed a workers' compensation claim, which was denied by both CNA and Timm (NCE).

In its original disposition of this claim, the Board determined that claimant's disability arose in May 1988, when claimant began to miss work because of her condition. Consequently, it allocated responsibility for the claim to Timm (NCE). On review, we said that initial responsibility for the claim is assigned to the employer for whom claimant was employed when she became disabled. *Timm*, 125 Or App at 401. When the claimant's first need for medical treatment does not coincide with the date when she first begins taking time off work because of the disability, the date of disability is the date the claimant begins receiving medical treatment for the compensable condition. The employer for whom the claimant works on the date of disability may escape responsibility by showing that subsequent employment contributed independently to the cause of the condition. We remanded for reconsideration of the date of disability and the assignment of responsibility. *Id.* at 401.

On remand, the Board concluded that the date of the first compensable treatment was September 25, 1987, and it assigned responsibility for the claim initially to CNA. It then found that claimant's condition had worsened in May, June and July 1988, and that her employment during that time independently contributed to the worsening of her condition. Therefore, it ultimately assigned responsibility for the claim to Timm (NCE). Timm (NCE) seeks review of the Board's determination, but does not challenge the Board's determination of the date of disability. Rather, he argues that there is not substantial evidence for the Board's finding that claimant's condition worsened in May, June and July 1988, and that her employment with him during the time he was a noncomplying employer independently contributed to the worsening.

■ First, Timm (NCE) argues that there is no evidence of a worsening of the condition during the months in question, but only a worsening of symptoms[1] and increased pain. Thus, he asserts that the evidence is insufficient to support the assignment to him of responsibility for the claim. In the light of Mann's reports, we conclude that there is substantial evidence to support the Board's finding that claimant suffered more than a mere increase in symptoms. Contrary to Timm (NCE's) argument, the Board was not required to completely discount claimant's exacerbation of pain as evidence of a worsened condition. *Weller v. Union Carbide*, 288 Or 27, 30 n 2, 602 P2d 259 (1979). Moreover, this is not a case in which the treating physician opined that there was only an increase in symptoms.[2] When the evidence of the dramatic exacerbation of pain is considered with the evidence that claimant suffered from a "marked limitation in range of motion" in her low back, that the tenderness had radiated into the sacrotuberous area and that claimant was required to curtail the number of hours she worked, the Board could reasonably infer that claimant's condition worsened during the period in which Timm (NCE) was noncomplying.

■ Timm (NCE) also argues that there is no evidence to support the finding that the worsening was *caused* by claimant's employment with Timm (NCE). He argues that the worsening could just have easily been caused by claimant's nonwork-related activities. Mann concluded that the repeated stress of claimant's continued employment with Timm (NCE) had a "major impact" on her underlying condition. In the light of Mann's opinion, there is substantial evidence to support the Board's finding that claimant's employment during the time Timm was uninsured caused a worsening of her condition.

Affirmed.

---

[1] *See Bracke v. Baza'r*, 293 Or 239, 250, 646 P2d 1330 (1982) ("A recurrence of symptoms which does not affect the extent of a continuing underlying disease does not shift liability for the disabling disease to a subsequent employer.").

[2] *See Industrial Indemnity Co. v. Weaver*, 81 Or App 493, 497, 726 P2d 400 (1986) (concluding that where the claimant's physician determined that the employment had worsened the symptoms, but not the underlying condition, the Board did not err in finding that the employment had not caused a worsening of condition).