Argued and submitted June 23, 1995, reversed and remanded April 17, 1996

In the Matter of the Compensation of
Archiel F. Sanford, Claimant.

Archiel F. SANFORD,
*Petitioner,*

*v.*

BALTEAU STANDARD/SAIF CORPORATION,
Balteau Standard/Scott Wetzel
Services and Balteau Standard/
Fireman's Fund Insurance Company,
*Respondents.*

(WCB Nos. 93-10958, 93-06783, 93-10147; CA A85855)

914 P2d 708

Robert F. Webber argued the cause for petitioner. With him on the brief was Black, Chapman, Webber & Stevens.

Michael O. Whitty, Special Assistant Attorney General, argued the cause for respondents Balteau Standard/SAIF Corporation. With him on the brief were Theodore Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Joshua L. Palmer argued the cause for respondents Balteau Standard/Scott Wetzel Services. With him on the brief were Karen O'Kasey and Schwabe, Williamson & Wyatt.

Adam T. Stamper argued the cause for respondents Balteau Standard/Fireman's Fund Insurance Company. With him on the brief was Cowling, Heysell, Plouse, Ingalls & Moore.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Claimant petitions for review of an order of the Workers' Compensation Board allocating responsibility for his most recent back strain to SAIF. We reverse and remand.

At all material times, claimant was employed by Balteau Standard (employer). In February 1984, when employer was insured by SAIF, claimant filed an injury claim for "back strain, lower back." SAIF accepted the claim. Claimant was eventually diagnosed with bilateral S1 root irritation and received a micro lumbar diskectomy. He was awarded 35 percent unscheduled disability for that condition. Claimant sought treatment again in 1988, when his symptoms increased. He was diagnosed with "post-surgical failed back syndrome" causing degenerative damage to his L4-L5 disc and resulting in joint synovitis and joint pain. SAIF accepted the claim for that treatment as an aggravation of the 1984 injury.

In December 1990, when employer was self-insured and represented by Scott Wetzel, Inc., claimant again sought treatment after he experienced a sharp pain in his lower back while bending at work. He was diagnosed with a lumbar strain, and Scott Wetzel accepted his claim for medical treatment on behalf of employer. By early February 1991, claimant had returned to his pre-exacerbation state. In June 1991, he suffered another back strain, and Scott Wetzel accepted his claim on behalf of employer as a temporary exacerbation of the 1990 lumbar strain. Claimant had again returned to his pre-exacerbation state by early July 1991.

Claimant sought further treatment in 1993 when his back "went out" while he was bending over at work. At that time, Balteau Standard was insured by Fireman's Fund Insurance Company. Claimant experienced burning pain down his legs and tenderness in his right lumbar back. Dr. Lichtenstein, his treating physician, diagnosed "a new lumbar strain, albeit superimposed on his pre-existing condition." Claimant filed an aggravation claim with Scott Wetzel. On behalf of employer, Scott Wetzel denied responsibility

alleging that either SAIF or Fireman's Fund were responsible. Both SAIF and Fireman's Fund also denied responsibility.

The referee[1] concluded that SAIF was the responsible insurer, explaining:

> "No physician indicates that there was any residua from the Scott Wetzel injury. The compensable condition was not the post-injury status. The compensable condition that has combined with the most recent injury arose out of the 1984 injury, insured by SAIF. As the last insurer of the accepted compensable condition, SAIF bears the burden of proving by a preponderance of the evidence that a new injury [has occurred]. It has failed to sustain its burden."

The Board adopted the order of the ALJ with the following supplementation:

> "After reviewing the record, we conclude that the medical evidence fails to establish that claimant's temporary lumbar strain in 1991, which resolved without permanent impairment, is related to his prior 1984 injury which resulted in L5 disc surgery, degenerative changes of the spine and joint pain and synovitis. Furthermore, we agree with the Referee that there is no persuasive medical evidence which relates claimant's current condition to the 1991 strain. Finally, we conclude that, under ORS 646.308(1), the persuasive medical evidence does not establish that the May 1993 injury while the employer was self-insured * * * is the major contributing cause of claimant's current low back condition."

Claimant and SAIF argue that the Board erred in assigning responsibility to SAIF under ORS 656.308(1). That statute provides:

> "When a worker sustains a compensable injury, the responsible employer shall remain responsible for future compensable medical services and disability relating to the compensable condition unless the worker sustains a new compensable injury involving the same condition. If a new compensable injury occurs, all further compensable medical services and disability involving the same condition

---

[1] Referees are now called administrative law judges (ALJ). Or Laws 1995, ch 332. Hereafter, we will refer to the referee as the ALJ.

shall be processed as a new injury claim by the subsequent employer. The standards for determining the compensability of a combined condition under ORS 656.005(7) shall also be used to determine the occurrence of a new compensable injury or disease under this section."[2]

Our decision in *Smurfit Newsprint v. DeRosset*, 118 Or App 368, 848 P2d 116 (1993), involved the application of ORS 656.308(1)[3] in circumstances similar to these. We explained there that

"ORS 656.308(1) is presumably intended to simplify the processing of claims involving multiple employers or insurers and successive compensable injuries involving the same condition or body part. We conclude that, when benefits are sought for 'further compensable medical services and disability subsequent to a new injury,' ORS 656.308 is applicable if it is determined that the 'further' disability or treatment for which benefits are sought is compensable, *i.e.*, that it is materially related to a compensable injury, and that it involves a condition that has previously been processed as a part of a compensable claim. Responsibility is then assigned to the employer or insurer with the most recent claim for that condition." *Id.* at 371-72.

In *Smurfit*, we remanded the case to the Board because it had not addressed whether the claimant's current need for treatment involved the same condition that was involved in either of his earlier accepted claims. We stated:

"The remaining question for the Board to decide is whether the surgery involves the same condition as was determined to be compensable in either 1977 or 1984. If it does, then either EBI or Smurfit, the one with the most recent accepted claim for the condition, must process the claim pursuant to ORS 656.308(1). If it does not involve the same

_____

[2] ORS 656.308(1) was amended in 1995, and the amended version applies here. *See Volk v. America West Airlines*, 135 Or App 565, 899 P2d 746 (1995), *rev den* 322 Or 645 (1996). However, the amended portion of the statute is not pertinent and cannot alter our analysis of the case. Thus, remand to the Board for it to reconsider in the light of the amendment is not required. *Baar v. Fairview Training Center*, 139 Or App 196, 911 P2d 1232 (1996).

[3] In *Smurfit*, we relied, in part, on our decision in *SAIF v. Drews*, 117 Or App 596, 845 P2d 217 (1993), which was later reversed in *SAIF v. Drews*, 318 Or 1, 860 P2d 254 (1993). The portion of *Smurfit* upon which we rely here was not founded on our earlier decision in *Drews*.

condition, then the statute is inapplicable, and the claim should be processed without regard to it." *Id.* at 372.

Accordingly, in this case, under ORS 656.308(1), responsibility for claimant's 1993 treatment is assigned to the insurer with the most recent accepted claim involving that same condition. Notably, neither claimant nor SAIF challenges the Board's conclusion that claimant's 1993 need for treatment relates to the 1984 treatment accepted by SAIF.[4] Instead, they argue that claimant's 1990 and 1991 treatments, which were accepted by Scott Wetzel on behalf of employer, involved the same condition as the 1984 and 1985 treatments, which were accepted by SAIF, and that consequently, under ORS 656.308(1), self-insured employer is responsible for all future treatments involving the same condition as that present in the 1984 and 1985 treatments as well as the 1990 and 1991 treatments.

■ Thus, the critical issue here is whether Scott Wetzel's acceptance, on behalf of employer, of claimant's claims for "lumbar strain" did, in fact, involve the same condition as that accepted by SAIF in 1984 and 1985. If the condition accepted by Scott Wetzel on behalf of employer did involve the same condition as that accepted by SAIF, then self-insured employer is responsible for claimant's 1993 need for treatment. If the condition accepted by Scott Wetzel did not involve the same condition as the one accepted by SAIF, then SAIF is responsible for claimant's 1993 need for treatment.

Claimant and SAIF argue that the Board's conclusion that claimant's treatment in 1990 and 1991 is not related to his treatment in 1984 and 1985 is not supported by the Board's findings and the medical evidence. The Board adopted the following finding of the ALJ:

> "[Claimant's] back condition due to the 1990 injury is lumbosacral strain, superimposed on degenerative and mechanical changes due to the 1985 surgery."

---

[4] Neither claimant nor SAIF challenges the Board's conclusion that claimant did not suffer a new injury in 1993 or Fireman's Fund's denial on that basis. Accordingly, it is not necessary to consider whether, under ORS 656.308(1), responsibility shifted to Fireman's Fund as a new injury.

SAIF notes that that finding is consistent with the opinion of claimant's treating physician, who opined that claimant's 1990 and 1991 lumbar strains were "superimposed on his pre-existing condition." However, after making the above finding, the Board went on to conclude:

> "After reviewing the record, we conclude that the medical evidence fails to establish that claimant's temporary lumbar strain in 1991 which resolved without permanent impairment, is related to his prior 1984 injury which resulted in L5 disc surgery, degenerative changes of the spine and joint pain and synovitis."

SAIF argues that it is inconsistent for the Board to conclude that the 1991 strain is not related to the 1984 injury while, at the same time, finding that claimant's 1990 injury was "superimposed" on the residua of the 1985 surgery. It contends that the term "superimposed" necessarily connotes that the 1990 injury involved the same condition as the 1984 and 1985 injuries.

Whether SAIF is correct depends on how the term "superimposed" was used by the Board and by Dr. Lichtenstein. However, there is nothing in the record or in the Board's order that indicates how the term was used. Further, none of the parties advance a formal definition for "superimpose." *Webster's Third New International Dictionary* (unabridged 1971), at 2294, defines "superimpose" as follows:

> "**1:** to place in a covering position: overlay * * * **2a:** to cause to become attached, united, coexistent, or *interrelated* in the manner of a layer, stratum, or accretion * * * **b:** to add or impose *without integrating*: attach as an unassimilated entity." (Emphasis supplied.)

Under the above definition, "superimpose" may mean to become interrelated with something else or to overlap something without integration. Depending on which meaning Dr. Lichtenstein and the Board intended, SAIF may be correct that the Board's conclusion contradicts its finding and the medical evidence. The Board is obligated to " 'clearly and precisely state what it found to be the facts and fully explain why those facts lead it to the decision it makes.' " *Furnish v. Montavilla Lumber Co.*, 124 Or App 622, 624-25, 863 P2d 524 (1993) (quoting *Home Plate, Inc. v. OLCC*, 20 Or

App 188, 190, 530 P2d 862 (1975)). It did not do so here. Because we cannot determine whether the Board's findings and its conclusion are consistent, we reverse and remand for the Board to clarify its decision.

     Reversed and remanded.