Argued and submitted March 31, affirmed October 22, 1997

In the Matter of the Compensation of
Lewis H. Titus, Claimant.

WILLAMETTE INDUSTRIES, INC.,
*Petitioner,*

*v.*

Lewis H. TITUS,
Pope & Talbot, Inc., SAIF Corporation,
Pacific Gas & Transmission, and
Employers Insurance of Wausau, Inc.,
*Respondents.*

(94-09737, 94-07998 & 94-06921; CA A92576)

950 P2d 318

Jerald P. Keene argued the cause and filed the briefs for petitioner.

Philip Emerson argued the cause for respondent Lewis H. Titus. With him on the brief was Brothers, Steelhammer & Ash.

David L. Runner argued the cause and filed the brief for respondents Pope & Talbot, Inc., and SAIF Corporation.

David O. Horne argued the cause and filed the brief for respondents Pacific Gas & Transmission and Employers Insurance of Wausau, Inc.

Before Deits, Chief Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Willamette Industries, Inc., a self-insured employer, seeks review of an order of the Workers' Compensation Board (Board) assigning it responsibility for claimant's 1994 injury. We review for errors of law and substantial evidence, ORS 656.298(6); ORS 183.482(7) and (8), and affirm.

In 1980, while working as a log truck driver for Pope & Talbot (SAIF's insured), claimant's lower back began to trouble him. Without identifying a specific incident, claimant established, and SAIF accepted, a compensable lower-back strain. Although claimant's attending physician, Dr. Golden, initially thought claimant might have suffered a lumbar disc herniation, a subsequent myelogram "was completely normal." SAIF later closed the claim without an award of permanent disability. Claimant continued working with Pope & Talbot until 1985.

In 1986, claimant obtained a temporary job with Willamette Industries, Inc. (Willamette) and later was hired as a regular employee. Before hiring claimant as a regular employee, Willamette gave him a preemployment physical examination. The examiner reported that claimant had "a history of back strain, possible disc, in 1979 * * * ha[d] no recurrence since then * * * ha[d] been totally pain-free recently and [wa]s feeling fine." Claimant testified that he was relatively pain free from 1980 until his injury in 1989.

In February 1989, as claimant was installing a heat exchanger, he again strained his back. Claimant's attending physician, Dr. Hilles, examined claimant, recommending pain medication and bed rest. Hilles also noted that unless claimant's condition "considerably improved * * * a neurosurgical consult" was necessary. Although his condition was improving, claimant wanted a second opinion and, consequently, went to see Dr. Kendrick. As part of his treatment with Kendrick, claimant received a CAT scan. Dr. Krieves conducted the procedure and noted a "mild central disc protrusion at L5-S1." Kendrick testified that, in 1989, "there was no evidence that claimant had a herniated * * * disc." Willamette accepted the injury as a back strain, later closing the claim without an award of permanent disability. Claimant

testified that, after his 1989 injury, he experienced recurring lower back pain most of the time.

In February 1992, claimant began working for Pacific Gas and Transmission (PG&T) (Wausau's insured) as a mechanic's apprentice. As noted by the administrative law judge (ALJ), "[t]his was a physically undemanding job. The hardest thing on his back was riding around in a company pickup." In early 1994, and without a connection to a specific incident, claimant experienced a significant exacerbation of his recurring lower back pain. Claimant went first to his family physician, Dr. Boggess, who referred him back to Kendrick. Kendrick diagnosed a herniated disc at L5-S1 and recommended surgery. Shortly thereafter, claimant requested that Willamette reopen his claim and authorize surgery. Willamette denied responsibility.

At the hearing, the employers/insurers conceded compensability. Regarding responsibility, claimant argued that Willamette was the actual cause of his condition. Claimant relied on Kendrick's medical opinion. Initially, Kendrick agreed with a report prepared for Willamette by Drs. Bald and Bobker opining that the 1980 injury was the injury that "set the stage" for the later herniation. However, after a subsequent interview with claimant and a review of claimant's medical records, Kendrick changed his opinion, concluding that "[i]t was the gradual worsening of [the] * * * injury of 1989 which led to his surgery in 1994." Kendrick explained that his opinion changed because, after consulting with claimant, claimant's "history point[ed] out two very important facts: (1) that he had very little problem between 1980 and 1989; and (2) that he has had nothing but problems from 1989 until the present time." The ALJ accepted Kendrick's revised opinion.

The ALJ held Willamette responsible for claimant's condition, applying ORS 656.308(1).[1] The Board affirmed the ALJ's decision but on different grounds. It held that ORS

---

[1] ORS 656.308(1) provides, in part:

"When a worker sustains a compensable injury, the responsible employer shall remain responsible for future compensable medical services and disability relating to the compensable condition unless the worker sustains a new compensable injury involving the same condition."

656.308(1) did not apply because claimant's 1994 injury for a herniated disc was not the "same condition" as the two previous claims for lower-back strains. The Board affirmed on the ground that Willamette was responsible because it was the "actual cause" of claimant's condition. Further, the Board held that it was "unnecessary to rely on [the last injurious exposure rule] * * * to determine responsibility" because the evidence showed that Willamette was the "major contributing cause" of claimant's condition.

Willamette contends that "the Board erred in failing to apply the last injurious exposure rule [of responsibility] based merely upon a determination of major causation at Willamette's employment." Willamette argues specifically that "[t]he policies and purposes of the last injurious exposure rule require it to be applied uniformly except where one of the employments is proven to be the 'actual' or 'sole' cause of the condition involved." (Emphasis in original.) Essentially, Willamette argues that in all successive-injury cases involving two or more employers, unless the evidence shows that one employer was the sole cause of the claimant's disability, the last injurious exposure rule must be applied to assign responsibility.[2] We disagree with Willamette.

The last injurious exposure rule is both a rule of proof and a rule of assignment of responsibility. *Roseburg Forest Products v. Long*, 325 Or 305, 309, 937 P2d 517 (1997) (citing *Runft v. SAIF*, 303 Or 493, 500, 739 P2d 12 (1987)). The rule of proof allows a claimant to prove the compensability of an injury without having to prove the degree, if any, to which exposure to disability-causing conditions at a particular employment actually caused the claimant's condition. *Id.* Compensability is conceded by all parties, and claimant did not rely on the last injurious rule of proof. Therefore, Willamette does not, and could not, invoke defensively the rule of

---

[2] SAIF cross-assigns error, contending that the Board should have applied ORS 656.308 to this case. SAIF argues specifically that claimant's third back injury, involving the herniated disc, was the "same condition" as claimant's previous two lower-back strains. However, we decline to reach this issue because the entire cross-assignment is based on an alleged improper factual finding by the Board, a finding that we conclude is supported by substantial evidence. *See Sanford v. Balteau Standard/SAIF Corp.*, 140 Or App 177, 914 P2d 708 (1996) (A determination of whether a new injury involves the same condition as a previously accepted injury is a factual determination.).

proof to shift responsibility to a later employer. *See Roseburg Forest Products*, 325 Or at 312 (explaining *Boise Cascade Corp. v. Starbuck*, 296 Or 238, 675 P2d 1044 (1984)); *Runft*, 303 Or at 501 (same); *Spurlock v. International Paper Co.*, 89 Or App 461, 464, 749 P2d 611 (1988).

■        Willamette instead seeks to invoke defensively the second part of the rule, the rule of responsibility. It is well established that employers have an interest in the consistent application of the rule and, therefore, may assert the rule of responsibility as a defense even when a claimant has chosen to prove actual causation.[3] *Spurlock*, 89 Or App at 464-65 (citing *Runft*, 303 Or at 501-02).

■        As a rule of assignment of responsibility, the rule assigns full responsibility to the last employer that could have caused the claimant's injury. *Roseburg Forest Products*, 325 Or at 309. The rule is a substitute for allocation of responsibility among several partially responsible employers in cases where it would be difficult, and expensive, to determine the exact proportion of responsibility. *Bracke v. Baza'r*, 293 Or 239, 245, 646 P2d 1330 (1982). Essentially, it makes the processing of compensation claims more administratively efficient. *See Runft*, 303 Or at 502.

■        However, the rule is not "intended to transfer liability from an employer whose employment caused a disability to a later employer whose employment did not." *Boise Cascade Corp.*, 296 Or at 244. The rule imposes responsibility only on the last employer that "*contributed* to the worker's" disability. *Roseburg Forest Products*, 325 Or at 310 (emphasis in original); *see also Beneficiaries of Strametz v. Spectrum Motorwerks*, 325 Or 439, 939 P2d 617 (1997).

■        Consequently, a necessary factual predicate for the defensive use of the rule of responsibility is proof that "the subsequent employment actually contributed to the worsening of an underlying disease." *Spurlock*, 89 Or App at 465; *see also Peterson v. Eugene F. Burrill Lumber*, 294 Or 537, 543,

---

[3] SAIF argues that ORS 656.308(2) also allows Willamette to assert a responsibility defense, regardless of whether ORS 656.308(1) applies. Because Willamette legally asserts only the last injurious rule of responsibility as a defense, we decline to address this point.

660 P2d 1058 (1983) ("[F]or the last injurious exposure rule to apply * * * under the employer's successive-injury case, there must be evidence of a second injury which materially contributed to the claimant's disability."). Proof that the subsequent employment independently contributed to the current disability is required before the rule of responsibility can be invoked defensively by the targeted employer.

■ Here, the ALJ and the Board found that Willamette's employment was the major contributing cause of claimant's disability. No party disputes these findings. Conversely, neither the ALJ nor the Board found evidence showing that claimant's subsequent employment at PG&T contributed, even slightly, to claimant's condition. The basic finding about the PG&T employment was that it was a "physically undemanding job." Moreover, claimant's 1994 condition was not linked to a second injury or a specific incident in 1994. Nevertheless, Willamette argues that the Board's finding of "'major' causation as to one employer necessarily implies 'material' or 'minor' causation by another."[4] We disagree. Although the Board's finding does imply other causation, it does not establish proof of other causation "by another" employer. Consequently, without proof linking the other causation to a later work-related incident, the Board's finding does not establish the necessary factual predicate to defensive invocation of the rule: that claimant's later employment at PG&T independently contributed to claimant's condition. As such, it does not support a shift in responsibility to PG&T by invocation of the last injurious exposure rule. Because claimant did not invoke the rule of proof to establish compensability, because the Board found that claimant's

---

[4] The requirement that an employer prove that another employer "solely" caused the injury is necessary only *after* a worker invokes the rule to prove compensability. In that circumstance,

"an employer that otherwise would be responsible under the last injurious exposure rule may avoid responsibility if it proves either: (1) that it was impossible for conditions at its workplace to have caused the disease in this particular case or (2) that the disease was caused solely by conditions at one or more previous employment." *Roseburg Forest Products v. Long*, 325 Or 305, 313, 937 P2d 517 (1997).

*See also Beneficiaries of Strametz v. Spectrum Motorwerks*, 325 Or 439, 444-45, 939 P2d 617 (1997); *Boise Cascade Corp. v. Starbuck*, 296 Or 238, 244-45, 675 P2d 1044 (1984). Once the rule is invoked, sole causation, or proof of impossibility, is required to avoid responsibility.

1989 injury was the major contributing cause of his 1994 injury, and because no proof existed that claimant's subsequent employment at PG&T independently contributed to his current disability, the Board was correct in refusing to invoke the last injurious exposure rule to assign responsibility.

Affirmed.