Argued and submitted July 15, affirmed September 22, 2004

In the Matter of the Compensation of
Robert R. Tobola, Claimant.

RAYTHEON CONSTRUCTORS
and Liberty Northwest Insurance Corporation,
*Petitioners,*

*v.*

Robert R. TOBOLA;
Morrison Knudsen Corp. - Washington Group International,
Travelers Ins. Co.; Enron Corp., and Travelers Ins. Co.,
*Respondents.*

01-09195; A122263

97 P3d 1278

Deborah L. Sather argued the cause for petitioners. With her on the briefs were Brian M. Perko and Sather, Byerly & Holloway.

Aukjen T. Ingraham argued the cause for respondent Robert R. Tobola. With her on the brief was Ransom, Gilbertson, Martin & Lefkowitz, LLP.

Kenneth L. Kleinsmith argued the cause for respondents Morrison Knudsen Corp. - Washington Group International and Travelers Ins. Co. With him on the brief was Radler, Bohy, Replogle & Miller.

Jerald P. Keene argued the cause and filed the brief for Enron Corp. and Travelers Ins. Co.

Before Edmonds, Presiding Judge, and Landau and Schuman, Judges.

SCHUMAN, J.

## SCHUMAN, J.

The Workers' Compensation Board (board), applying the last injurious exposure rule, found that claimant Tobola's bilateral hearing loss was a compensable occupational disease and that employer Raytheon Constructors and its insurer, Liberty Northwest Insurance Corporation,[1] were responsible for claimant's condition. Raytheon seeks judicial review, contending that claimant's visit to an audiologist and the audiologist's recommendation for hearing aids did not constitute "medical services" under ORS 656.802(1)(a), that claimant's hearing loss was therefore not a compensable occupational disease and that, even if it were, one of claimant's subsequent employers and not Raytheon bore responsibility. We affirm.

The board adopted the following facts, which, we conclude, are supported by substantial evidence in the record. ORS 656.298(7); ORS 183.482(7), (8)(c). Claimant, whose employment as an ironworker since 1972 continually exposed him to loud noises, noticed over time that his hearing appeared to be deteriorating. On May 25, 2000, when he was working for Raytheon, he consulted Neil Aiello, a certified audiologist. Aiello examined claimant's ears and performed diagnostic tests. He concluded that claimant showed mild to moderate hearing loss in both ears and recommended hearing aids. Claimant, however, could not afford to buy them, and, as of the closing of the record in this case, he had still not bought them.

In July 2000, Raytheon went bankrupt and was taken over by Washington Group. Claimant's duties did not change, and he was exposed to the same loud noises. As he did before the change in ownership, claimant wore ear protection only rarely.

Claimant stayed with Washington Group until August 2001. In September 2001, he filed hearing loss claims against Raytheon and Washington Group. Both denied

---

[1] We refer to Raytheon and its insurer as Raytheon. Subsequent employers Washington Group International (Washington Group), Enron Corporation (Enron), and their common insurer, Travelers Ins. Co., are respondents along with claimant.

responsibility. From October 2001 to November 2001, he worked for Enron and then returned to Washington Group in January 2002.

In June 2002, claimant attended an Insurer Medical Exam with Dr. Richard Hodgson, an otolaryngologist, at Washington Group's request. An audiogram performed by an audiologist working with Hodgson revealed mild to moderate hearing loss in both ears, but Hodgson concluded that claimant's condition was not severe enough to require hearing aids. Thereafter, Raytheon and Washington Group denied compensability. Claimant appealed, and ultimately the board found that claimant's hearing loss was a compensable occupational disease and that Raytheon was responsible. Raytheon seeks judicial review.

The board's opinion relies on the last injurious exposure rule (LIER) for both its compensability and responsibility findings. We recently summarized that rule as follows:

> "LIER is both a rule of proof and a rule of assignment of responsibility. *Willamette Industries, Inc. v. Titus*, 151 Or App 76, 80, 950 P2d 318 (1997) (citing *Roseburg Forest Products v. Long*, 325 Or 305, 309, 937 P2d 517 (1997)). The rule of proof allows a claimant to prove the compensability of a condition by proving that the condition resulted from employment without having to prove the degree, if any, to which exposure to disability-causing conditions at a particular employment actually caused the claimant's condition. *Id.* Under LIER as a responsibility-assigning rule, full responsibility falls presumptively to the last employer (before the onset of disability or treatment) that exposed the claimant to working conditions of the kind that could cause the disability. *Roseburg Forest Products*, 325 Or at 309. [An] employer can defensively invoke LIER to shift responsibility to a subsequent employer. *Willamette Industries, Inc.*, 151 Or App at 81. However, 'a necessary factual predicate for the defensive use of the rule of responsibility is proof that "the subsequent employment actually contributed to the worsening of an underlying disease." ' *Id.* (quoting *Spurlock v. International Paper Co.*, 89 Or App 461, 465, 749 P2d 611 (1988)). In other words, the employer must prove that the subsequent employment 'independently contributed' to the injury before the rule of responsibility can be invoked defensively. *Id.* at 82."

*SAIF v. Hoffman*, 193 Or App 750, 753, 91 P3d 812 (2004). Under these principles, the board found that claimant had a compensable condition resulting from career-long exposure to noise; that responsibility fell presumptively on Raytheon because conditions there could have caused the hearing loss and claimant worked for Raytheon at the time treatment began, that is, when he first consulted Aiello; and that Raytheon could not demonstrate that subsequent employment independently contributed to the hearing loss. Raytheon contests each of those determinations.

■ First, Raytheon argues that claimant's hearing loss is not compensable. It reasons as follows: In order to establish compensability, claimant bears the burden of proving that he has a disease that "requires medical services or results in disability or death," ORS 656.802(1)(a). Claimant is not disabled because his condition has never caused him to lose work time, and he has never required medical services because his visit to an audiologist did not result in treatment of any kind and the only physician who examined him concluded that he did not need hearing aids.

Even if we were to agree that disability occurs only when time loss results—an issue we do not address—we would reject Raytheon's argument in any event because claimant had a disease that required medical services. Raytheon's contention that an audiologist cannot perform medical services is irrelevant (and also wrong, as we hold below), because ORS 656.802(1)(a) specifies that an industrial disease is compensable if it *requires* medical services, regardless of whether it *results in* medical services. The undisputed evidence from both Aiello and Hodgson establishes that claimant suffered from hearing loss and that occupational noise exposure was its major contributing cause. Those facts suffice to put claimant within the ambit of ORS 656.802(1)(a).[2]

■ Employer also argues that it is not responsible under the LIER. Under that rule, responsibility is presumptively assigned to the potentially causal employer for whom the

---

[2] *See also* ORS 656.005 (7)(c) ("disabling compensable injury" includes one that can reasonably be expected to have caused permanent disability).

claimant is working at the time the claimant first seeks or receives medical treatment, whichever comes first. *Foster Wheeler Corp. v. Marble*, 188 Or App 579, 582, 72 P3d 645, *rev den*, 336 Or 60 (2003). Employer argues categorically that an audiologist cannot provide medical treatment and that, even if one can, Aiello did not do so in this case. We disagree.

ORS 681.205(5) defines the practice of audiology as follows:

> " 'Practice audiology' means to apply the principles, methods, and procedures of measurement, prediction, evaluation, testing, counseling, consultation and instruction that relate to the development and disorders of hearing * * * to prevent or modify the disorders or to assist individuals in auditory and related skills for communication. 'Practice audiology' includes the fitting or selling of hearing aids."

Several Oregon statutes refer to audiologists along with other medical professionals. ORS 694.142(5)(a) refers to "a person licensed to practice medicine and surgery, osteopathy and surgery, or a clinical audiologist." Another statute requires certification of a severe hearing impairment, deafness, severe speech impairment, or being deaf-blind by "a licensed physician, audiologist, speech-language pathologist or vocational rehabilitation counselor." Or Laws 1987, ch 290, § 14 (1)(a), *compiled as a note after* ORS 759.690. Like chiropractors and psychologists, audiologists can provide medical services even though they do not possess a medical degree.

Aiello did provide such services. In *Foster Wheeler Corp.*, this court addressed the question of whether the claimant sought or received medical treatment when he obtained either of two audiograms. One was part of a union-sponsored general health screening program, and the other was taken on the recommendation of a coworker. We concluded that neither test triggered the LIER:

> " 'Medical treatment,' then, involves either ongoing medical care or application of some technique, drug, or other action designed either to alleviate or cure a disease or injury. No 'medical treatment' occurred at claimant's first two audiograms. * * * In neither case did he receive any

care for his condition. Nobody performed any action designed to cure or alleviate it."

*Foster Wheeler Corp.*, 188 Or App at 583. Here, in contrast, Aiello did take an "action designed to alleviate * * * a disease": he recommended that claimant obtain hearing aids. The fact that claimant did not purchase the hearing aids does not negate the fact that, unlike the claimant in *Foster Wheeler Corp.*, he received medical treatment in the form of a recommendation.

■    Finally, Raytheon argues that the board should have shifted responsibility to a subsequent employer. The basis of this argument is a concurrence report in which Aiello agreed that claimant had worked for Raytheon from September 1997 to July 2001 and that the work during that period contributed to the hearing loss. In fact, claimant's work for Raytheon ended in July 2000, not July 2001; between July 2000 and August 2001, claimant worked for Washington Group. According to Raytheon, however, the fact that Aiello misstated the name of the employer is irrelevant; the dispositive fact to which Aiello agreed was that claimant's employment through 2001, that is, through and including some time when he was working for Washington Group, contributed to his hearing loss. Therefore, Raytheon concludes, Washington Group was the last employer where the working conditions independently contributed to the compensable disease and should be assigned responsibility.

Raytheon's argument is not persuasive. In October 2002, Aiello affirmed agreement with a letter from Hodgson to Travelers/Washington in which Hodgson stated that claimant's employment with Washington Group from July 2000 to August 2001 "*may* have contributed to his hearing loss." (Emphasis added.) The letter, and consequently Aiello's concurrence, stated only that claimant "would have potentially been exposed to injurious noise" between July 2000 and August 2001 and that Hodgson could not say that it was "impossible" that that employment actually worsened claimant's hearing loss. Hodgson went on to say that he could not know if an actual worsening occurred during that period. The board wrote:

"Thus, even if we assume that Mr. Aiello's February 25, 2001 concurrence report should be construed to find that claimant's employment through July 2001 at Washington Group contributed to his hearing loss, we are unable to reconcile that report with Mr. Aiello's October 2002 concurrence report from Raytheon Liberty, which indicated only that claimant's employment at Washington Group between July 7, 2000 and August 2001 'may have contributed to his hearing loss.' * * * [That concurrence] is insufficient to establish that claimant's employment at Washington *actually* contributed to a worsening of his hearing loss. *See Gormley v. SAIF*, 52 Or App 1055, 1060 (1981) (medical opinions must be stated in terms of probability rather than possibility)."

(Emphasis added.) The board held that, in light of the inconsistent reports, Raytheon had failed to carry its burden of demonstrating that subsequent employment actually contributed to a worsening of claimant's hearing loss. *See Reynolds Metals v. Rogers*, 157 Or App 147, 153, 967 P2d 1251 (1998), *rev den*, 328 Or 365 (1999) (discussing burden). That conclusion is supported by substantial evidence.

In sum, the board correctly concluded that claimant's hearing loss was a compensable condition, that Raytheon was on the risk when claimant first received medical treatment, and that Raytheon failed to establish that a subsequent employment actually contributed to a worsening of the hearing loss.

Affirmed.